

# EVANSTON INSURANCE COMPANY
Ten Parkway North
Deerfield, IL 60015
(847) 572-6000

**INSURANCE POLICY**

Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.

In Witness Whereof, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

_Kathleen Anne Sturgeon_
Secretary

_Bernard albanese_
President

MJIL 1000 06 10



# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:   Policy Number: UM-800116
      Insured:  PRIME TIME HEALTHCARE
      Insurer:  EVANSTON INSURANCE COMPANY
      Risk ID. No.: 3886353

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2007 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States— to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires EVANSTON INSURANCE COMPANY to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally pays 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this terrorism coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act. You should also know that under federal law you are NOT required to purchase terrorism coverage.

Certified Acts of Terrorism coverage is provided for no additional premium.



# EVANSTON INSURANCE COMPANY

## HEALTH CARE UMBRELLA LIABILITY POLICY
## DECLARATIONS

POLICY NUMBER: UM-800116          PREVIOUS POLICY NUMBER: UM-800061

1.  Named Insured and Mailing Address:

PRIME TIME HEALTHCARE
306 E 1ST ST STE 2
LAVISTA, NE 68128

2.  Policy Period: From:   March 27, 2014 To: March 27, 2015
    12:01 A.M. Standard Time At Your Address Shown Above

3.  Retroactive Date: March 27, 2013 (This policy's inception date applies unless otherwise noted here.)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| 4. | | Policy Premium: | | |
|---|---|---|---|---|
| | A. | Flat Premium | | |
| | B. | Rate: Flat | | |
| | C. | Minimum Premium: | $ | 6,000.00 |
| | D. | Deposit Premium: | $ | 6,000.00 |
| | E. | Policy Minimum Earned Premium: 25% | | |
| | | Policy Fee: $100    NE Surplus Lines Tax: $183 | Total: $6,283.00 | |

| 5. | | Limits of Insurance: | | |
|---|---|---|---|---|
| | A. | Each Occurrence, Offense or Claim Limit: | $ | 2,000,000 |
| | B. | Combined Aggregate Limit: | $ | 2,000,000 |

| Producer Number, Name and Address | This policy is issued by a nonadmitted insurer, and in the event of the insolvency of such insurer, this policy will not be covered by the Nebraska Property and Liability Insurance Guaranty Association. |
|---|---|
| 36956<br>RISK PLACEMENT SERVICES<br>7450 West 130th Street<br>Suite 200<br>Overland Park, KS 66213 | Joel D. Cavaness<br>Risk Placement Services, Inc.<br>Two Pierce Place<br>Itasca, IL 60143<br>Lic. #240948 |

6.     Underlying Insurance: See Schedule of Underlying Insurance attached MDHX 2001 03 11.

7.     Forms and Endorsements attached to this policy at time of issuance:
        See Schedule of Forms and Endorsements attached MDIL 1001 08 10.

8.     NOTICES:

        Notices required to be provided to us under this policy shall be addressed to:

| CLAIM AND POTENTIAL CLAIM NOTICES: | ALL OTHER NOTICES: |
|---|---|
| Claims Service Center<br>MARKEL SERVICE, INCORPORATED<br>Ten Parkway North<br>Deerfield, Illinois 60015 | MARKEL MIDWEST<br>a division of Markel Service, Incorporated<br>Ten Parkway North<br>Deerfield, IL 60015 |
| Fax: (855) 662-7535<br>E-mail: newclaims@markelcorp.com | Fax: (866) 730-2526 |

**These declarations, together with the Policy, any Endorsement(s) and any application(s), complete the above numbered policy.**

| Countersigned: June 6, 2014 | By: _Gerald Albanese_ |
|---|---|
| (Date) | Authorized Representative |



# EVANSTON INSURANCE COMPANY

## HEALTH CARE UMBRELLA LIABILITY POLICY
## SCHEDULE OF UNDERLYING INSURANCE

| Policy Number: | Effective Date: | Named Insured: |
|---|---|---|
| UM-800116 | March 27, 2014 | PRIME TIME HEALTHCARE |

| Carrier, Policy Number, and Period | Type of Policy | Applicable Limits or Amounts of Insurance |
|---|---|---|
| Evanston Insurance Company<br>SM899623<br>3/27/2014 to 3/27/2015 | Commercial General Liability | Bodily Injury and Property Damage Combined<br><br>$1,000,000 Each Occurrence<br>$3,000,000 General Aggregate<br><br>Retroactive Date, if applicable: 3/27/2012 |
| N/A | Commercial Automobile Liability | Bodily Injury and Property Damage Combined |
| Travelers Insurance Company<br>6KUB 5B43286-9<br>3/27/2014 to 3/27/2015 | Employers Liability | Bodily Injury by Accident $500,000   Each accident<br>Bodily Injury by Disease $500,000   Policy limit aggregate<br>Bodily Injury by Disease $500,000   Each employee |
| Evanston Insurance Company<br>SM899623<br>3/27/2014 to 3/27/2015 | Professional Liability | $1,000,000 per claim<br>$3,000,000 Aggregate<br><br>Retroactive Date, if applicable: 3/27/2012 |



# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| Form Number | Form Name |
|---|---|

MEHX 0001 03 11 - Health Care Umbrella Liability Policy
1. MEIL 5231 06 11     Certified Acts of Terrorism Coverage
2. MEIL 1324 09 13     Conditional Exclusion of Terrorism
3. MPIL 1070 09 13     Notice to Policyholders Potential Restriction of Terrorism Coverage

RI 0150



# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CERTIFIED ACTS OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

HEALTH CARE UMBRELLA LIABILITY POLICY
SPECIFIED MEDICAL PROFESSIONS EXCESS GENERAL LIABILITY INSURANCE POLICY

It is agreed that the following is added:

**Certified Acts of Terrorism**

It is hereby understood and agreed that this policy includes coverage on account of any "ultimate net loss" in excess of the "underlying limit" resulting from any "certified act of terrorism." Notwithstanding the foregoing, if no coverage is afforded by an applicable policy of "underlying insurance" for any "certified act of terrorism," this policy shall not drop down but shall apply to "ultimate net loss" in excess of the "underlying limit" of the applicable "underlying insurance" as if such "underlying insurance" had included coverage for any "certified act of terrorism." We shall be obligated only to the extent that we would have been obligated had you effected coverage for any "certified act of terrorism" under such applicable "underlying insurance."

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The federal Terrorism Risk Insurance Act set forth the following criteria for a "certified act of terrorism":

1. The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If the aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the Insurer has met the Insurer's deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of the Treasury.

The terms and limitations of any terrorism coverage provided therewith, or the inapplicability or omission of terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy.

All other terms and conditions remain unchanged.

MEIL 5231 06 11



# EVANSTON INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONDITIONAL EXCLUSION OF TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM
## RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY INSURANCE POLICY
HEALTH CARE UMBRELLA LIABILITY POLICY
SPECIFIED MEDICAL PROFESSIONS EXCESS LIABILITY INSURANCE POLICY

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

A. Applicability of the Provisions of this Endorsement

  1. The provisions of this endorsement shall become applicable commencing on the date when one or more of the following first happens or the inception date of this policy if the Policy Period in which this endorsement applies begins after such date:

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or policy; or

    b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available and with revisions that:

      (1) Increase the Company's statutory percentage deductible under the Program for terrorism losses;

      (2) Decrease the United States Government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

  2. If the provisions of this endorsement become applicable, such provisions:

    a. For Claims Made Coverage, supersede any terrorism endorsement already endorsed to this policy that addresses Certified Acts of Terrorism, but only with respect to an incident of terrorism (however defined) that results in a Claim first made on or after the date when the provisions of this endorsement become applicable; or

    b. For Occurrence Coverage, supersede any terrorism endorsement already endorsed to this policy that addresses Certified Acts of Terrorism, but only with respect to an incident of terrorism (however defined) that results in a Bodily Injury or Property Damage and an Occurrence, the entirety of which happens on or after the date when the provisions of this endorsement become applicable; and

    c. Remain applicable unless the Company notifies the first Named Insured of changes in these provisions, in response to federal law.

MEIL 1324 09 13      Includes copyrighted material of Insurance Services Office, Inc.      Page 1 of 3
with its permission.

RI 0152

3. If the provisions of this endorsement do not become applicable, any terrorism endorsement already endorsed onto this policy, that addresses Certified Acts of Terrorism, will continue in effect unless the Company notifies the first Named Insured of changes to that endorsement in response to federal law.

B. Section Definitions is amended by the addition of the following:

1. **Terrorism** means any activity against any natural person, organization or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence;

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express or express opposition to a philosophy or ideology.

C. Section The Exclusions is amended by the addition of the following:

This policy does not apply to any Ultimate Net Loss based upon, arising out of, directly or indirectly caused by, or contributed to in any way by Terrorism, including action in hindering or defending against an actual or expected incident of Terrorism. Any such Ultimate Net Loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such incident of Terrorism.

This exclusion shall apply only when one or more of the following are attributed to an incident of Terrorism:

1. The Terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the Terrorism was to release such material;

3. The Terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials;

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the Terrorism was to release such materials;

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured damage sustained by property of all natural persons and organizations affected by the Terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusion; or

6. Fifty (50) or more persons sustain death or Serious Physical Injury.

   For the purposes of this exclusion, Serious Physical Injury means:

   a. Physical injury that involves a substantial risk of death;

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of Terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Items C.5. or C.6. are exceeded.

MEIL 1324 09 13          Includes copyrighted material of Insurance Services Office, Inc.          Page 2 of 3
                                        with its permission.

RI 0153

With respect to this exclusion Items C.5. and C.6. describe the threshold used to measure the magnitude of an incident of Terrorism and the circumstances In which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of Terrorism, there is no coverage under this Coverage Part or policy.

All other terms and conditions remain unchanged.

MEIL1324 09 13          Includes copyrighted material of Insurance Services Office, Inc.          Page 3 of 3
                                    with its permission.

RI  0154



# EVANSTON INSURANCE COMPANY

## NOTICE TO POLICYHOLDERS
## POTENTIAL RESTRICTION OF TERRORISM COVERAGE

The federal Terrorism Risk Insurance Act established the federal Terrorism Risk Insurance Program ("Program") within the Department of the Treasury, under which the United States Government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Program is subject to a termination date of December 31, 2014 unless extended by the United States Government. If the Program terminates, or is extended with certain changes prior to or during the term of this policy, then the treatment of terrorism under this policy will change. If the Program is terminated, the definition of "Certified Act of Terrorism" will no longer apply and the limit on the Company's liability pursuant to the federal Terrorism Risk Insurance Act will no longer apply. If the Program is extended with changes, the definition of "Certified Act of Terrorism" may change and the limit on the Company's liability pursuant to the federal Terrorism Risk Insurance Act may change.

THIS POLICY DURING TENURE OF THE TERRORISM RISK INSURANCE PROGRAM AS THE PROGRAM EXISTS PURSUANT TO THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2007:

Contains either:

   a. A Certified Acts of Terrorism Exclusion which excludes any claim or portion thereof based upon, arising out of, or in any way involving a "Certified Act of Terrorism"; or

   b. A Certified Acts of Terrorism Endorsement which indicates that this policy does not contain an exclusion of any claim based upon, arising out of, or in any way involving a "Certified Act of Terrorism". The endorsement states that such claims are subject to a limit on the Company's liability pursuant to the federal Terrorism Risk Insurance Act; or

   c. A Certified Acts of Terrorism Coverage endorsement which indicates that this policy includes coverage on account of any Ultimate Net Loss in excess of the Underlying Limit of the applicable Underlying Insurance resulting from any "Certified Act of Terrorism". The endorsement states that such losses are subject to a limit on the Company's liability pursuant to the federal Terrorism Risk Insurance Act.

The absence of a terrorism exclusion does not create coverage for any injury or damage that would otherwise be excluded under the policy.

POTENTIAL CHANGES TO THIS POLICY:

Endorsement MEIL 1324 09 13 Conditional Exclusion of Terrorism is attached to this policy. The provisions of the endorsement only become applicable to the policy if one or more of the following happens:

   a. The Program established by the federal Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under the policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available and with revisions that:

      (1) Increase the Company's statutory percentage deductible under the Program for terrorism losses;

      (2) Decrease the United States Government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under the policy.



# EVANSTON INSURANCE COMPANY

## HEALTH CARE UMBRELLA LIABILITY POLICY
### FOLLOWING FORM - OCCURRENCE OR CLAIMS MADE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in item 1. of the Declarations. The words "we," "us," and "our" refer to the Insurance Company stated in the Declarations providing this insurance.

The word "insured" means any person or organization qualifying as such under Section Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section Definitions for their explanation.

In consideration of the payment of the premium, and in reliance upon the statements and representations made in the Application, and subject to mutual agreements set forth herein and in the Declarations, and subject to all the terms and conditions of this policy, we hereby agree with you as follows:

## INSURING AGREEMENTS

A.  **Coverage A – "Bodily Injury" and "Property Damage" Liability Insuring Agreement**

    1.  We will pay on behalf of the insured for that portion of "ultimate net loss" in excess of the "underlying limit" because of "bodily injury" or "property damage" to which this insurance applies, but only up to the Limits of Insurance stated in the Declarations. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section Defense And Supplementary Payments Coverages A And B.

    2.  We will follow form over Additional Insureds covered in the "controlling underlying insurance" to the extent of their liability due to the negligence of the Named Insured.

B.  **Coverage B – "Personal and Advertising Injury" Liability Insuring Agreement**

    1.  We will pay on behalf of the insured that portion of "ultimate net loss" in excess of the "underlying limit" because of "personal and advertising injury" to which this insurance applies, but only up to the Limits of Insurance stated in the Declarations. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section Defense And Supplementary Payments Coverages A And B.

    2.  We will follow form over Additional Insureds covered in the "controlling underlying insurance" to the extent of their liability due to the negligence of the Named Insured.

C.  **Occurrence or Claims-Made Coverage Following Form Agreement**

    1.  Occurrence Following Form: With respect to Coverage A and Coverage B, this insurance applies to "bodily injury," "property damage," or "personal and advertising injury" covered by the "controlling underlying insurance" written on an "occurrence" basis and listed in the Schedule of Underlying Insurance, but only if:

        a.  The "bodily injury" or "property damage" was caused by an "occurrence," and/or the "personal and advertising injury" was caused by an "offense";

MEHX 0001 03 11        Includes copyrighted material from Insurance Services Office, Inc.,        Page 1 of 21
with its permission.

RI 0156

b.    The "occurrence" or "offense" took place in the "coverage territory," and

c.    The "bodily injury," "property damage," "personal and advertising injury" occurred during the policy period of this policy.

It is agreed that:

(1)    With respect to your liability for "bodily injury" to your "employees" arising out of and in the course of their employment by you:

    (a)    "Bodily injury" by disease must be caused by or aggravated by the conditions of that employment; and

    (b)    An "employee's" last day of last exposure to conditions causing or aggravating such a disease must occur during the policy period of this policy.

(2)    "Damages" because of "bodily injury" include "damages" claimed by a person or organization for care or loss of services or death resulting at any time from the "bodily injury."

(3)    "Property damage" that is loss of use of tangible property that is not physically injured or destroyed shall be deemed to occur at the time of the "occurrence" that caused it.

2.    **Claims Made Following Form:**  With respect to Coverage A and Coverage B, this insurance applies to "bodily injury," "property damage," or "personal and advertising injury" covered by the "controlling underlying insurance" written on a claims made basis and listed in the Schedule of Underlying Insurance; this insurance applies only if a "claim" for "damages" is first made against an insured during the policy period, including the extended reporting period, if exercised pursuant to all "underlying insurance". With respect to Coverage A and Coverage B, this insurance also applies to an "occurrence," "offense," "bodily injury," "property damage," or "personal and advertising injury" which is reported to the "underlying insurer" with the required detail as an event reasonably expected to result in a "claim," provided such event is covered by all applicable "underlying insurance" written on a claims made basis and listed in the Schedule of Underlying Insurance and provided such event is also reported to us on the same date including the required elements stated in the "underlying insurance."

But this insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" which occurred:

a.    Before the "retroactive date" shown in item 3. of the Declarations Page of this policy ; or

b.    After the expiration of this policy.

It is agreed that:

(1)    With regard to an "occurrence," "offense," "bodily injury," "property damage," or "personal and advertising injury" which is reported to the "underlying insurer" and to us with the required detail, as an event reasonably expected to result in a "claim," and which, by such reporting, is subject to the coverage afforded by the "underlying insurer," then any "claim" subsequently made against the insured arising out of such event shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the "underlying insurer."

(2)    All "claims" for "damages" because of "bodily injury" to the same person will be deemed to have been made at the time the first of those "claims" is made against an insured. This includes "damages" claimed by a person or organization for care, loss of services, or death resulting at any time from the "bodily injury."

(3)    All "claims" for "damages" because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those "claims" is made against an insured.

MEHX 0001 03 11    Includes copyrighted material from Insurance Services Office, Inc.,    Page 2 of 21
with its permission.

RI 0157

(4)    All "claims" for "damages" because of "personal and advertising injury" to the same person or organization as a result of an "offense" will be deemed to have been made at the time the first of those "claims" is made against any insured.

# EXCLUSIONS

A.    **Coverage A – "Bodily Injury" and "Property Damage" Liability Exclusions**

Coverage A of this policy does not apply to:

1.    "Bodily injury" or "property damage" that is intended by the insured or can be expected from the standpoint of a reasonable person to cause "bodily injury" or "property damage," even if the "bodily injury" or "property damage" is of a different degree or type than actually intended or expected. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2.    "Bodily injury" or "property damage" for which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages":

    a.    Assumed in an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    b.    That the insured would have in the absence of the contract or agreement.

3.    "Bodily injury" to:

    a.    Any "executive officer," director, or "employee" of the insured who is injured by another "executive officer," director, or "employee" of the same insured in the course of such employment except to the extent that coverage is provided by a policy listed in the Schedule of Underlying Insurance and then only to the extent provided by such policy or policies; or

    b.    Any "executive officer," director, or "employee" of the insured, or an applicant for employment by the insured, caused by employment practices of the insured. Employment practices include, but are not limited to, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, wrongful dismissal or wrongful termination of an "executive officer," director, or "employee"; or

    c.    Any "executive officer," director, or "employee" of the insured while employed in violation of the law with the actual knowledge of the insured, or the actual knowledge of any "executive officer, " director, or "employee" of the insured.

    d.    The spouse, child, parent, brother, or sister of that "executive officer," director, or "employee" or applicant for employment as a consequence of a., b., or c. above.

    This exclusion applies:

    (1)    Whether the insured may be liable as an employer or in another capacity; and

    (2)    To any duty to share "damages" with or repay someone else who must pay "damages" because of such "bodily injury."

    This exclusion does not apply to liability assumed by the insured in an "insured contract."

4.    "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, loading, unloading, or entrustment to others of an "aircraft" or "watercraft" owned or operated by, or chartered, rented, or loaned to any insured, except to the extent that coverage is provided by a policy listed in the Schedule of Underlying Insurance and then only to the extent provided by such policy or policies.

5.    "Bodily injury" or "property damage" arising out of the use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed, or demolition contest or in a stunting activity.

6.    "Property damage" to:

    a.    Property you own, rent or occupy;

    b.    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

    c.    Property loaned to you;

MEHX 0001 03 11    Includes copyrighted material from Insurance Services Office, Inc., with its permission.    Page 3 of 21

RI  0158

d. Property in your care, custody, or control;
e. That particular part of real property on which you or a contractor or subcontractor working directly or indirectly for you are performing operations, if the "property damage" is due to those operations; or
f. That particular part of real property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph b. of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

Paragraph c., d., e., and f. of this exclusion do not apply to liability assumed in a sidetrack agreement.

Paragraph f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

7. "Property damage" to "your product" arising out of it or any part of it.

8. "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the "damages" arises was performed for you by a subcontractor.

9. "Property damage" to "impaired property" or property that has not been physically injured or destroyed arising out of:

a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
b. A delay or failure by you or anyone acting for you or on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property due to sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

10. "Damages" claimed for all loss, costs or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product," "your work," or "impaired property" is such work or property is withdrawn or recalled from the market or from use by a person or organization due to a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

11. "Bodily injury" for which an insured may be held liable by reason of:

a. Causing or contributing to the intoxication of a person;
b. The furnishing of alcoholic beverages to a person who is under:
   (1) The legal drinking age; or
   (2) The influence of alcohol;
c. Violation of a statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion only applies if any insured is in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

This exclusion does not apply to the extent that coverage is provided by a policy listed in the Schedule of Underlying insurance. Coverage provided will follow the provisions, exclusions and limitations of the underlying insurance.

12. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, loading, unloading, or entrustment to others of any "auto," except to the extent that coverage is provided by a policy listed in the Schedule of Underlying insurance and then only to the extent provided by such policy or policies.

13. Any duty to reimburse an insurer as required by the terms of any endorsement for Motor Carrier Policies of Insurance For Public Liability under Section 29 and 30 of the Motor Carrier Act of 1980, or any similar law.

MEHX 0001 03 11    Includes copyrighted material from Insurance Services Office, Inc., with its permission.    Page 4 of 21

RI  0159

B.    Coverage B – "Personal and Advertising Injury" Liability Exclusions

Coverage B of this policy does not apply to:

1.    "Personal and advertising injury":

   a.    Arising out of the oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
   b.    Arising out of the oral or written publication of material whose first publication took place before the beginning of the policy period, or if written on a claims-made basis, before the "retroactive date" shown in item 3. of the Declarations page of this policy;
   c.    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;
   d.    For which the insured has assumed liability in a contract or agreement; however, this exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement; or
   e.    To an "executive officer," director, or "employee" of the insured arising from that person's employment by the insured.

2.    "Personal and advertising injury" arising out of:

   a.    Breach of contract, other than misappropriation of advertising ideas under an implied contract;
   b.    The failure of goods, services to conform with advertised quality or performance;
   c.    The wrong description of the price of goods, products or services;
   d.    An electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control;
   e.    An "offense" committed by an insured whose business is:
         (1)    Advertising, broadcasting, publishing, or telecasting;
         (2)    Designing or determining content of web-sites for others; or
         (3)    An Internet search, access, content or service provider.
         For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

3.    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

4.    "Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

5.    "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
      However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

C.    Coverages A and B – Exclusions

Coverages A and B of this policy do not apply to:

1.    "Ultimate net loss" arising out of or contributed to in any way by:

   a.    The actual, alleged, or threatened discharge, dispersal, release, migration, escape, or seepage of pollutants; or
   b.    Any loss, cost, or expense arising out of any:
         (1)    Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or
         (2)    Claim or suit, whether by or on behalf of any governmental authority or any other entity, for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 5 of 21
with its permission.
RI  0160

As used in this exclusion, pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, reclaimed, or disposed of.

2. "Ultimate net loss" arising out of or in connection with:

    a. Asbestos or asbestos-related material(s), lead, or silica dust, regardless of whether used, manufactured, sold, handled, maintained, repaired, removed, disposed of, transported, distributed, installed by, or in any way connected with the insured; or

    b. The existence of asbestos or asbestos-related material(s), lead, or silica dust in any goods, products, materials, storage devices, containers, wrappings, packaging, warehouses, buildings, or other structures of any kind, or any part thereof; or

    c. Any goods or products which are damaged, contaminated, or otherwise affected by asbestos or any asbestos-related material(s), lead or silica dust; or

    d. Asbestos abatement activities, including clean-up, repair, or any other corrective measures which are occasioned by the existence of asbestos or asbestos-related material(s), lead, or silica dust in any land, soil, water or watercourses, the atmosphere an/or building(s), whether voluntarily undertaken or require by any governmental body or other entity to eliminate asbestos or asbestos-related material(s), lead or silica dust; or

    e. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given, and any obligation to share "damages" with or repay someone else who must pay "damages" in connection with 2.a., 2.b., 2.c., or 2.d. above.

3. "Ultimate net loss" arising out of or in connection with:

    a. "Bodily injury," "property damage" and/or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal seepage, migration, release, escape, presence, growth or reproduction of "mold."

    b. Costs and expenses to investigate or defend any claim or "suit" or payment of any fine or penalty for a. above.

    c. Any loss, cost, expense, fine or penalty arising out of any:

        (1) Claim, "suit," request, demand, order or statutory or regulatory requirement than any insured or others test for, monitor, clean up, remove, abate, mitigate, remediate, dispose of, contain, treat, detoxify or neutralize, or in any way respond to, or assess the concentration or effects of "mold," or

        (2) Claim or "suit" for "damages" because of testing for, monitoring, cleaning up, removing, abating, mitigating, remediating, disposing of, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the concentration or effects of "mold."

    This exclusion 3.c.(1) and 3.c.(2) apply to any actual or alleged supervision, instructions, recommendations, warnings or advice given or which should have been given by any insured or others.

    This exclusion 3.a., 3.b. and 3.c. above applies to:

        (i) "Bodily injury", "property damage" and "personal and advertising injury" regardless of whether such is included within the "products-completed operations hazard;"

        (ii) Any obligation to share "damages" with or repay someone else who must pay "damages"; and

        (iii) "Mold" existing, emanating from or moving anywhere indoors or outdoors.

    As used in this exclusion "Mold" means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or byproducts resulting therefrom regardless of whether they are proved to cause disease, injury or damage.

4. "Ultimate net loss" arising out of or in connection with any:

    a. Refusal to employ;

    b. Termination of employment;

    c. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, any of which arise from an employment related practice;

MEHX 0001 03 11     Includes copyrighted material from Insurance Services Office, Inc.,     Page 6 of 21
with its permission.

RI  0161

    d.    Employment-related practices, policies, acts, or omissions; or

    e.    Consequential "bodily injury," "property damage," or "personal and advertising injury" as a result of 4.a., 4.b., 4.c. or 4.d. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity, and to any obligation to share "damages" with or repay someone else who must pay "damages" because of such "bodily injury," "property damage," or "personal and advertising injury."

5.    Liability imposed on the insured or the insured's insurer under the following laws:

    a.    The Employee Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended, or any similar law, regulation, or order issued pursuant to it; or

    b.    Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

    c.    Any workers' compensation, unemployment compensation, or disability benefits law, or any similar law.

6.    "Ultimate net loss" arising out of or that results from any consequence, direct or indirect, due to war (whether war be declared or not), warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents, or any act or condition incident to war. War includes invasion, act of a foreign enemy, hostilities, civil war, insurrection, rebellion, revolution, military or usurped power, strike, riot, civil commotion, revolution, bombardment, or confiscation by order of any government or public authority.

7.    "Bodily injury" or "property damage":

    a.    With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability; or

    b.    Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

        (1)    Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

        (2)    The insured is, or had this policy not been issued would be, entitled to indemnity from the United Sates of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    c.    Resulting from the "hazardous properties" of "nuclear material," if:

        (1)    The "nuclear material":
            (a)    Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or
            (b)    Has been discharged or dispersed therefrom;

        (2)    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

        (3)    The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (3) applies only to "property damage" at such "nuclear facility" and any property thereat.

As used in this exclusion:

    a.    "Hazardous properties" include radioactive, toxic or explosive properties;

    b.    "Nuclear material" means "source material," "special nuclear material," or "by-product material";

    c.    "Source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    d.    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    e.    "Waste" means any waste material:

MEHX 0001 03 11    Includes copyrighted material from Insurance Services Office, Inc.,    Page 7 of 21
with its permission.

RI  0162

  (1) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any one ore processed primarily for its "source material content"; and

  (2) Resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs (1) and (2) of the definition of "nuclear facility."

 f. "Nuclear facility" means:

  (1) Any "nuclear reactor";

  (2) Any equipment or device designed or used for:

   (a) Separating the isotopes of uranium or plutonium;

   (b) Processing or utilizing "spent fuel"; or

   (c) Handling, processing or packaging "waste";

  (3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

  (4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

  And includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

 g. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

 h. "Property damage" includes all forms of radioactive contamination of property.

**8.** "Ultimate Net Loss" arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**9.** "Ultimate Net Loss" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

 a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

 b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

 c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## DEFENSE AND SUPPLEMENTARY PAYMENTS COVERAGES A AND B

**A.** We will have the right to defend any "claim" or "suit" seeking "damages" for "bodily injury," "property damage," "personal and advertising injury" to which this insurance applies, but:

 1. We have no duty to defend any insured against a "claim" or "suit" not covered by this policy.

  We have no duty to defend any insured against a "claim" or "suit" not covered by the "underlying insurance."

 2. When a "claim" or "suit" is covered by this policy and is also covered by "underlying insurance" or any other applicable insurance, we have no duty to defend. We shall have the right to associate with the insured in the defense and control of any "claim" or "suit" that we think may involve this policy.

 3. When a "claim" or "suit" covered by this policy, would have been covered by "underlying insurance" but for the exhaustion of the applicable limit of such "underlying insurance" as a result of any "occurrence" or "offense" to which this policy would have applied, we will have a duty to defend any "claim" or "suit" to which this policy applies.

 4. When we have a duty to defend as described in 3. above, we will:

MEHX 0001 03 11  Includes copyrighted material from Insurance Services Office, Inc., with its permission.  Page 8 of 21

RI 0163

a.  Defend any "claim" or "suit" against the insured seeking "damages" on account of "bodily injury," "property damage," or "personal and advertising injury" even if such "claim" or "suit" is groundless, false, or fraudulent;

b.  Investigate, negotiate, and settle any "claim" or "suit" as we deem expedient;

c.  Pay the following Supplementary Payments:

   (1)  Up to $250 for the cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

   (2)  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit," including actual loss of earnings up to $250 a day because of time off from work.

   (3)  "Pre-judgment interest" awarded against the insured on that part of the judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit," we will not pay any "pre-judgment interest" imposed or earned after the date of such offer.

   (4)  All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

B.  Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance as set forth in this policy, unless such expenses of the "underlying insurer(s)" reduce the limits of "underlying insurance" of any policy listed in the Schedule of Underlying Insurance.

C.  Both our right and duty to defend any existing or future "claim" or "suit" end when we have exhausted the applicable Limit of Insurance by payment of judgments or settlements or expenses, if applicable, under Coverages A or B.

D.  If we are prevented by law from carrying out A., B., and C. above, we will pay any expense incurred with our consent.

## WHO IS AN INSURED

A.  If the Named Insured stated in item 1. of the Declarations is:

   1.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   2.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   3.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   4.  An organization other than a partnership, joint venture, or "limited liability company," you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your "executive officers" and directors. Your stockholders are also insureds, but only with respect to their liability as your stockholders.

   5.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

B.  Each of the following is also an insured:

   1.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you and while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "bodily injury" arising out of his or her providing or failing to provide professional health care services unless such individual is included as an insured in a policy of "underlying insurance" listed in the Schedule of Underlying Insurance.

MEHX 0001 03 11      Includes copyrighted material from Insurance Services Office, Inc., with its permission.      Page 9 of 21

RI 0164

COMMERCIAL UMBRELLA

2. Any person (other than your "employee" or "volunteer worker") or an organization while acting as your real estate manager.

3. Any person or organization having proper temporary custody of your property if you die, but only:

   a. With respect to liability arising out of the maintenance or use of that property; and
   b. Until your legal representative has been appointed.

4. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and all of your duties under this policy.

5. Any other person or organization who is insured under the "controlling underlying insurance." The coverage afforded such insureds under this policy will be no broader than the "controlling underlying insurance" except for this policy's Limit of Insurance.

C. With respect to:

1. An "auto"; or
2. "Mobile equipment" registered in your name under a motor vehicle registration law;

To which the "controlling underlying insurance" applies, any person is an insured while driving such "auto" or "mobile equipment" along a public highway with your permission.

Other persons or organizations responsible for the conduct of such person(s) are also insureds, but only for their liability due to the operation of the "auto" or registered "mobile equipment."

However, the owner or anyone else from whom you hire or borrow an "auto" is an insured only if that "auto" is a trailer connected to an "auto" owned by you.
But no person or organization is an insured under this paragraph C. for:

   a. "Bodily injury" to a co-employee of the person driving the "auto" or "mobile equipment"; or
   b. "Property damage" to property owned by you or the employer of a person who is an insured under this provision; or
   c. An "auto" you hire or borrow from one of your partners, or "employees," or members of their households, if they are the owner of such "auto"; or
   d. An "auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employees"; or
   e. The movement of property to or from an "auto" except you, your "employees," partners, lessees, or borrowers of such auto and employees of the lessees or borrowers.

D. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured, However:

1. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

2. Coverage is applicable only in excess of the limits of the "underlying insurance" as shown in the Schedule of Underlying Insurance. You must add such organization to your "underlying insurance" as soon as possible, advising us of such additions. We may then make adjustment of premium charges.

3. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

4. Coverage B does not apply to "personal and advertising injury" due to an "offense" committed before you acquired or formed the organization.

E. No person or organization is an insured with respect to the conduct of a current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 10 of 21
                                    with its permission.
                                                                                                RI  0165

## LIMITS OF INSURANCE

A.  The Each Occurrence, Offense or Claim Limit stated in the Declarations is the most we will pay for the total of all "ultimate net loss" arising out of any one "occurrence," "offense" or "claim."

B.  The limit stated in the Declarations for the Combined Aggregate Limit is the most we will pay under Section Insuring Agreements for all "ultimate net loss".

C.  With respect to Coverage A and Coverage B, the Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

1.  Insureds;
2.  "Autos" or "mobile equipments";
3.  "Claims" made or "suits" brought;
4.  Persons or organizations making "claims" or bringing "suits"; or
5.  Coverage afforded under this policy.

D.  If the applicable limits of "underlying insurance" are reduced or exhausted by payments from one or more "occurrences," "offenses," or "claims" the Limits of Insurance of this policy will apply in excess of such reduced or exhausted limits.

E.  The Limits of Insurance of this policy apply to the policy period, including the extended reporting period, if applicable to all "underlying insurance" and if exercised pursuant to all "underlying insurance."

## POLICY CONDITIONS

A.  Appeals

If the Insured or an "underlying insurer" elects not to appeal a judgment, which exceeds the "underlying limit," we may elect to do so. If we do so, we shall be liable, in addition to the Limit of Insurance, for all costs, taxes, expenses, and interest on judgments incidental to such an appeal. We shall also be liable for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under Section Defense and Supplementary Payments Coverages A and B.

B.  Bankruptcy

Bankruptcy, insolvency, or receivership of the insured, or of the insured's estate, or of any "underlying insurer" will not relieve us of our obligations under this policy; however, with regard to bankruptcy, insolvency, or receivership of an "underlying insurer," this policy shall not apply as a replacement of such bankrupt or insolvent insurer. Our Limits of Insurance will apply only in excess of the limit(s) of insurance stated in the Schedule of Underlying Insurance of this policy.

C.  Cancellation

This policy may be cancelled by the Named Insured authorized to act on behalf of all of insureds by surrender thereof to us or to our underwriting manager, on behalf of us, or by mailing to the aforementioned written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, we shall retain the customary short rate proportion of the premium.

This policy may be cancelled by us or by our underwriting manager, by mailing to the Named Insured authorized to act on behalf of all insureds at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if we cancel the policy because the Named Insured authorized to act on behalf of all insureds has failed to pay a premium or deductible when due, including premium and deductible(s) due on any other policy(ies) issued by us or any of our affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by us by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice by the Named Insured, us, or our underwriting manager shall be equivalent to mailing. If cancelled by us or

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 11 of 21
with its permission.

RI  0166

by our underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

D. Changes

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of us shall not effect a waiver or a change in any part of this policy and shall not estop us from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the insureds and us or any of our agents relating to this insurance.

E. Assignment of Interest

We shall not be bound by an assignment of interest by any insured unless our consent to such assignment is endorsed onto this policy.

F. Duties in the Event of an Occurrence, Offense, Claim, or Suit

You must see to it that we and your "underlying insurers":

1. Are notified in writing as soon as practicable of any "occurrence" or "offense" which may result in a "claim" involving this insurance or any "underlying insurance";

2. Receive written notice of the "claim" as soon as practicable and of the "suit" immediately. Notice includes:
   a. How, when, and where the "occurrence" or alleged "offense" took place;
   b. The insured's name and address;
   c. The names and addresses of any injured persons and witnesses;
   d. The nature and location of any injury or damage arising out of the "occurrence" or "offense";
   e. Copies of any demands, notices, summonses, or legal papers received in connection with a "claim" or "suit" involving you or any other insured.

3. Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to you or any other insured because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance may apply; and

4. Receive the insured's full cooperation in the investigation, adjustment, settlement, or defense of any "claim" or "suit," "occurrence" or "offense."

G. Assistance and Cooperation

The insured shall cooperate with us and upon our request, the insured shall: (1) submit to examination and interview by our representative, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of "suits"; (4) give a written statement or statements to our representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any "claim"; (5) provide any information required to comply with federal or state reporting regulations; all without cost to us. The insured shall further cooperate with us and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the insured may have. The insured shall not, except at his/her own cost, make any payment, admit any liability, settle any "claim," assume any obligation or incur any expense without our written consent.

If denial of coverage by the "controlling underlying insurer" is legally upheld because of a breach of a policy condition by the insured and if said breach is not also a breach of a condition of this policy, the insurance afforded by this policy shall apply in the same manner as though such "controlling underlying insurance" had not been breached and had remained in full effect.

H. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 12 of 21
with its permission.
RI  0167

I.   Inspections and Surveys

    1.   We have the right but are not obligated to:

        a.   Make inspections and surveys of your premises, operations, and equipment at any time;

        b.   Give you reports on the conditions we find; and

        c.   Recommend changes to those conditions.

    2.   Any inspections, surveys, reports, or recommendations we make relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public and we do not warrant the premises, operations, equipment, or conditions:

        a.   Are safe or healthful; or

        b.   Comply with laws, regulations, codes, or standards.

This condition applies not only to us, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports, or recommendations on our behalf.

J.   Legal Action Against Us

No action shall lie against us unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the insured's obligation to pay shall have been fully and finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and us.

Nothing contained in this policy shall give any person or organization any right to join us as a co-defendant in any action against the insured to determine the insured's liability. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve us of any of our obligations hereunder.

An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

K.   Maintenance of Underlying Insurance

    1.   You must keep the "underlying insurance" stated in the Schedule of Underlying Insurance of this policy, including renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. This also applies with respect to claims-made "underlying insurance" during any Extended Reporting Period of this policy. The limits of "underlying insurance" shall be unimpaired as of this policy's effective date and be maintained without reduction other than by payment of "damages" and "claim expenses" covered thereunder.

    2.   You must notify us immediately of any changes to the terms of any "underlying insurance" policy, including cancellation or replacement of such policy or policies by the "underlying insurer" or any other insurer. We may make adjustment of premium charges under this policy for the period from the effective date of such changes to the termination of any "underlying insurance" policies.

Your failure to comply with the foregoing shall not invalidate this policy; but, in the event of such failure, we shall be obligated only to the extent that we would have been obligated had the terms of the "underlying insurance" specified in the Schedule of Underlying Insurance been maintained in place.

L.   Other Insurance

    1.   We will pay only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

        a.   The total amount that all such other insurance would pay in the absence of this insurance; and

        b.   The total of all deductible and self-insured amounts under any other insurance.

    2.   This insurance is excess over any other insurance, whether such insurance is stated to be primary, excess, contributing, contingent, or on any other basis. This provision does not apply to such insurance specifically purchased to apply in excess of this policy's Limit of Insurance.

MEHX 0001 03 11      Includes copyrighted material from Insurance Services Office, Inc.,      Page 13 of 21
with its permission.

RI  0168

3.  We will have no duty under Coverages A and B to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we may undertake to do so, but we will be subrogated to the insured's right against all other insurers.

4.  If the insured has another Excess or Umbrella Policy with us covering a "claim" also covered by this policy, the insured must elect which policy shall apply and we shall be obligated under the policy so elected and shall not be obligated under any other policy.

M.  Premium Audit

1.  For policies issued on an adjustable basis (not a flat basis), upon expiration of this policy or its earlier termination date, the earned premium shall be computed on the basis of units of exposure times the rate. If the earned premium thus computed is more than the paid Deposit Premium stated in the Declarations, the insured shall immediately pay the excess to us; if less, we shall retain the Minimum Premium stated in the Declarations or the Policy Minimum Earned Premium stated in the Declarations, whichever is greater. The Policy Minimum Earned Premium is the smallest amount of premium that is fully earned in the event of cancellation, initiated by any party, prior to policy expiration.

2.  The first Named Insured must keep records of the information we need for premium computation, and must send us copies at such times as we may request.

3.  The first Named Insured shall cooperate in promptly providing to us the entire amount (or number) of such premium base during the whole or any specified part of the said period, including making their books available for verification and audit by our duly authorized representative of the information for a period of three years from the expiration date. If the insured fails to cooperate, we have the right to invoice an estimated audit which is due and payable immediately. The insured must pay all costs or expenses resulting from their failure to cooperate or their failure to pay an audit invoice. The providing of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor our right to additional premium.

N.  Authorization

By acceptance of this policy, the first Named Insured stated in Item 1. of the Declarations shall act on behalf of all insureds with respect to the giving and receiving of all notices to and from us as provided herein: the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the insureds agree that such person or organization shall act on their behalf.

O.  Representations

By acceptance of this policy, the insureds agree as follows:

1.  That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2.  That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by us under this policy, and that this policy is issued in reliance upon the truth of such representations.

P.  Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1.  As if each Named Insured were the only Named Insured; and
2.  Separately to each insured against whom a "claim" is made or a "suit" is brought.

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 14 of 21
with its permission.
RI 0169

Q. Transfer of Rights of Recovery Against Others to Us

1. If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair those rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

2. Any recoveries shall be applied first to reimburse any interests (including the insured) that have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the remainder, if any.

3. When we assist in pursuit of the insured's rights of recovery, resulting reasonable expenses shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

R. When "Ultimate Net Loss" Is Payable

Our obligation for any portion of "ultimate net loss" shall not arise until the insured or any "underlying insurer" has paid the "underlying limit." In the event that is stated in the Schedule of Underlying Insurance includes a specific coverage which has a sublimit, a separate limit or a supplemental limit of less than $500,000 for Employer's Liability or less than $1,000,000 for any other "underlying insurance," this policy shall exclude any "occurrence," "offense" or "claim" to which such specific coverage applies and shall not drop down to afford coverage in excess of such sublimit, separate limit or supplemental limit.

S. Service of Suit

Except with respect to any policy issued in any state in which we are licensed as an admitted insurer to transact business, it is agreed that in the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Midwest, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this policy, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

# EXTENDED REPORTING PERIOD

A. This Section applies to claims-made insurance under Coverages A and B.

1. We will provide an Extended Reporting Period as described below, if the Extended Reporting Period is exercised pursuant to the "underlying insurance." We will also provide an Extended Reporting Period when our layer of insurance is not renewed or replaced by you or by us provided you maintain the "underlying insurance" for the duration of the Extended Reporting Period.

2. The Extended Reporting Period is available, but only by an endorsement and for an additional charge. This Extended Reporting Period starts immediately at the end of the policy period and extends for the period of months as elected by the first Named insured, but in no case will the Extended Reporting Period be for a longer duration than the Extended Reporting Period of the "underlying insurance" listed in the Schedule of Underlying Insurance.

3. You must give us a written request for the endorsement within 30 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and;

MEHX 0001 03 11     Includes copyrighted material from Insurance Services Office, Inc., with its permission.     Page 15 of 21

RI 0170

     a.    Maintain any "underlying insurance" in full force and effect as specified in Condition K., Maintenance of Underlying Insurance of this policy; or

     b.    Purchase an Extended Reporting Period endorsement on any "underlying insurance" written on a claims-made basis.

The period of months for which the first Named Insured may exercise the Extended Reporting Period shall be as stated below:

    (1)    12 months;
    (2)    24 months;
    (3)    36 months; or
    (4)    48 months.

The additional premium for the Extended Reporting Period shall be determined by us in accordance with rates and rules in effect at the expiration of this policy period.

The endorsement shall set forth the terms, not inconsistent with this section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other insurance available under policies in force after the Extended Reporting Period starts.

4.    Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" covered by this policy on a claims-made basis for "bodily injury" or "property damage" that occurs before the end of the policy period but not before the "retroactive date" shown in Item 1. of the Declarations of this policy.

    Once in effect, Extended Reporting Periods may not be cancelled unless "underlying insurance" is not maintained. If canceled due to the failure of the insured to maintain an "underlying insurance", return premium shall be determined by us based on the "underlying insurance" maintained relative to that not maintained.

5.    In addition to the availability of the Extended Reporting Period for the period of months stated in A.3. above, an Extended Reporting Period of the following duration shall also be available:

    60 months;
    72 months; or
    84 months.

    The first Named Insured must make a written request for the longer duration Extended Reporting Period received by us within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. We will determine the additional premium to be charged for such Extended Reporting Period.

    We will provide to the first Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

    All other terms and conditions of the Section Extended Reporting Period shall apply with regard to the first Named Insured's exercise of any such longer duration Extended Reporting Period.

6.    Extended Reporting Periods do not reinstate or increase the Limits of Insurance.

## DEFINITIONS

A.    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

     a.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

     b.    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

MEHX 0001 03 11    Includes copyrighted material from Insurance Services Office, Inc.,    Page 16 of 21
with its permission.

RI  0171

B. "Aircraft" means any heavier-than-air or lighter-than-air vehicle designed to travel principally in the air to transport persons or property. "Aircraft" does not mean hovercraft. "Aircraft" also includes any vehicle or device specifically designed for travel or use outside the earth's atmosphere.

C. "Aggregate limit" means the maximum amount stated in the policy for which the insurer will be liable, regardless of the number of covered "claims."

D. "Auto" means a land motor vehicle, trailer, or semi-trailer designed for travel on public roads, including attached machinery or equipment. However, "auto" does not include "mobile equipment."

E. "Automobile hazard" means liability arising out of the ownership, maintenance, operation, use, "loading or unloading" of any "auto."

F. "Bodily injury" means bodily injury, sickness, disease, shock, fright, mental injury, or disability sustained by a person, and includes death from any of these at any time.

G. "Claim" means the insured's receipt of:
1. Any demand for "damages" or services; or
2. The service of "suit" papers or arbitration proceedings alleging liability of the insured, due to an "occurrence" or "offense" which may or may not be covered by this policy.
"Claim" does not include reports of accidents, or "occurrences," or any acts, errors, "offenses" or omissions which may give rise to a "claim."

H. "Claim expenses" means reasonable and necessary amounts incurred by us or by you with our prior written consent in the defense of that portion of any "claim" or "suit" for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of us to apply for or furnish any such bonds, and costs of appeals; provided, however, "claim expenses" shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with employees or officials of yours or our employees or officials; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for you or us.

I. "Controlling underlying insurance" means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance of this policy as "controlling underlying insurance" and any renewals or replacements of such policies. "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy.

J. "Controlling underlying insurer" means an insurance company issuing a policy of "controlling underlying insurance."

K. "Coverage territory" means anywhere in the world if the insured's responsibility to pay "damages" is determined in a "suit" on the merits, in the United States of America (including its territories and possessions), Puerto Rico, Canada, or in a settlement we agree to.

L. "Damages" means the monetary portion of any judgment, award or settlement; provided, however, "damages" shall not include:
1. Punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages;
2. Taxes, criminal or civil fines, or attorneys' fees of a party other than an insured or other penalties imposed by law;
3. Sanctions;
4. Matters which are uninsurable under the law pursuant to which this policy shall be construed; or
5. The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the insured.

M. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

N. "Executive officers" means a person holding any of the officer positions created by your charter, constitution, by-laws, or any similar governing document. "Executive officer" includes any other officer of the corporation.

O. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

MEHX 0001 03 11     Includes copyrighted material from Insurance Services Office, Inc.,     Page 17 of 21
with its permission.

RI  0172

1. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or
2. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

a. The repair, replacement, adjustment, or removal of "your product" or "your work"; or
b. Your fulfilling the term of the contract or agreement.

P. "Insured contract" means:
1. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
2. A sidetrack agreement;
3. Any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade; or
4. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
5. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.
6. An elevator maintenance contract; or
7. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay "damages" because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:
   (1) Preparing, approving or failing to approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or
   (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.
b. Under which the insured, if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including but not limited to those listed in a. above and supervisory, inspection, or engineering services; or
c. That indemnifies any person or organization for damage by fire to premises rented to you, loaned to you, or temporarily occupied by you.

Q. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

R. "Loading or unloading" means the handling of property:
1. After it is moved from the place where it is accepted for movement into or onto and "aircraft," "watercraft," or "auto;"
2. While it is in or on an "aircraft," "watercraft," or "auto;" or
3. While it is being moved from an "aircraft," "watercraft," or "auto" to the place where it is finally delivered.

But "loading and unloading" does not include the movement of property by means of a mechanical device, other than a hand truck that is not attached to the "aircraft," "watercraft," or "auto."

S. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
1. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;
2. Vehicles maintained for use solely on or next to premises you own or rent;
3. Vehicles that travel on crawler treads;
4. Vehicles, whether self-propelled or not, on which are permanently mounted:
   a. Power cranes, shovels, loaders, diggers, or drills; or
   b. Road construction or resurfacing equipment such as graders, scrapers, or rollers;
5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
   a. Air compressors, pumps, and generators, including spraying, welding, building cleaning, geographical exploration, lighting, and well servicing equipment; or
   b. Cherry pickers and similar devices used to lift workers to heights;

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 18 of 21
with its permission.

RI  0173

6.  Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of person or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
    a.  Equipment designed primarily for:
        (1)  Snow removal;
        (2)  Road maintenance, but not construction or resurfacing;
        (3)  Street cleaning;
    b.  Cherry pickers and similar devices mounted on automobile chassis and used to raise or lower workers; and
    c.  Air compressors, pumps, and generators, including spraying, welding, building cleaning, geographical exploration, lighting, and well servicing equipment.

T.  "Occurrence" means:
    1.  With respect to "bodily injury" or "property damage" liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or
    2.  With respect to employees of the Named Insured, "bodily injury" caused by accident or disease.

U.  "Offense" means any of the offenses included in the definition of "personal and advertising injury."

V.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    1.  False arrest, detention or imprisonment;

    2.  Malicious prosecution;

    3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    5.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

    6.  The use of another's advertising idea in your "advertisement"; or

    7.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

W.  "Pre-judgment interest" means interest added to a settlement, verdict, award, or judgment based on the amount of time prior to the settlement, verdict, award, or judgment whether or not made part of the settlement, verdict, award, or judgment.

X.  "Products-completed operations hazard:"
    1.  "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and caused by or arising out of "your product" or "your work" except:
        a.  Products that are still in your physical possession; or
        b.  Work that has not yet been completed or abandoned.
    2.  "Your work" will be deemed completed at the earliest of the following times:
        a.  When all work called for in your contract has been completed;
        b.  When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or
        c.  When that part of the work done at a job site has been put to its intended use by an person or organization other than another contractor or subcontractor working on the same project.
        Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.
    3.  This hazard does not include "bodily injury" or "property damage" caused by or arising out of:
        a.  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it:
        b.  The existence of tools, uninstalled equipment, or abandoned or unused materials.

Y.  "Property damage" means:
    1.  Physical injury to tangible property, including all resulting loss of use of that property; or

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 19 of 21
with its permission.

RI  0174

2. Loss of use of tangible property that is not physically injured or destroyed. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z. "Retained limit" means the amount of "underlying insurance" applicable to a "claim" or "suit," whether such "underlying insurance" is collectible or not.

AA. "Retroactive date" means the retroactive date stated in item 3. of the Declarations of this policy.

BB. "Suit" means a civil proceeding in which "damages" because of "bodily injury," "property damage," "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes any arbitration proceeding alleging such "damages" to which you must submit or submit with your consent, or any other alternative dispute resolution proceeding in which "damages" are claimed and to which you submit with our consent.

CC. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

DD. "Ultimate net loss" means the total amount of "damages" for which the insured is legally liable in payment of "bodily injury", "property damage", "personal and advertising injury." "Ultimate net loss" shall include "claim expenses" we incur with respect to any "bodily injury", "property damage", "personal and advertising injury" subject to coverage under this policy, if "claim expenses" of the "underlying insurer(s)" with respect to such "bodily injury", "property damage", "personal and advertising injury" reduce the limits of "underlying insurance" of the policy listed in the Schedule of Underlying Insurance applicable to such "bodily injury", "property damage", "personal and advertising injury". "Ultimate net loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any other expenses incurred by an insured, by us, or by any "underlying insurer."

EE. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance of this policy and any renewals or replacements of such policies. "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy.

FF. "Underlying insurer" means an insurance company issuing a policy of "underlying insurance."

GG. "Underlying limit" means the limit of insurance stated in the Schedule of Underlying Insurance of this policy.

HH. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

II. "Watercraft" means a vehicle designed to travel principally on or under water. "Watercraft" includes hovercraft.

JJ. "Your product" means:
1. Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:
   a. You;
   b. Others trading under your name; or
   c. A person or organization whose business or assets you have acquired; and
2. Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.
"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in 1., or 2. above.
"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

MEHX 0001 03 11          Includes copyrighted material from Insurance Services Office, Inc.,          Page 20 of 21
with its permission.

RI  0175

KK. "Your work" means:
1. Work or operations performed by you or on your behalf; and
2. Material, parts, or equipment furnished in connection with such work or operations.
"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in 1. or 2. above.

MEHX 0001 03 11     Includes copyrighted material from Insurance Services Office, Inc.,     Page 21 of 21
with its permission.
RI  0176