IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| TAVITA FARANI, TYLER BUNTING and MICHAEL LOCKE | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 3:16-CV-227 |
| LESLIE FILE | DEFENDANT |
| EVANSTON INSURANCE COMPANY | JUDGMENT DEBTOR |

**OPINION AND ORDER ON MOTION TO DISMISS**

Before this court is the motion **[doc. no. 206]** of the purported Judgment Debtor, Evanston Insurance Company ("EIC") requesting this court to dismiss this case for lack of in personam jurisdiction. EIC also had requested, in the alternative, that this court transfer this case to the United States District Court of Nebraska to be consolidated with the pending declaratory judgment action, *Evanston Insurance Company v. Prime Time Healthcare LLC*, Case No. 8:16-cv-159, 2018 WL 3369688, *1 (D. Neb. July 10, 2018). Subsequent to the filing of EIC's motion and prior to the hearing on this matter, a Stipulated Judgment was entered in the Nebraska case, bringing that litigation to a conclusion. At the hearing of this matter, all participating attorneys stated their agreement that EIC's request to transfer this case to the federal district court of Nebraska is now moot.

This court conducted hearings on the instant motion on September 20, 2019, and September 23, 2019.

1

## BACKGROUND

This case was tried to a jury in June of 2018. The case stemmed from a car wreck that occurred in the State of North Dakota. The jury found in favor of the three Plaintiffs and against the driver, Leslie File, in the sum of $877,780.00 for Tavita Farani; $617,707.61 for Tyler Bunting; and $583,519.00 for Michael Locke, amounts totaling over $2 million. File, a resident of the State of Mississippi, was a traveling nurse employed with Prime Time HealthCare (hereafter Prime Time) and was on assignment in the State of Montana at the time of the wreck. She was driving an automobile rented for her use by Prime Time, and was traveling back to Montana after visiting friends in North Dakota. The jury did not find against the employer, Prime Time, because they determined that File was not acting within the course and scope of her employment at the time of the wreck.

File's personal insurance company, Progressive, has paid its full coverage amount of $50,000 to the Plaintiffs here. File's employer, Prime Time Health Care, had a $1 million automobile policy with Travelers Insurance, which covered Prime Time's employees. Travelers, too, has paid its full coverage amount of $1 million to the parties injured in the wreck. File's employer, Prime Time HealthCare LLC, was also insured by Evanston Insurance Company (EIC) under a $2 million umbrella policy, that purportedly covered Prime Time employees for amounts above what the underlying insurer would pay. It is this latter policy which is at issue here.

## DISCUSSION

Plaintiffs contend that EIC, as an insurer of Prime Time is also an insurer of File, who, at the time of the collision, was driving a vehicle rented for her by Prime Time. In its motion to

2

dismiss, EIC says 1) this court does not have general or specific personal jurisdiction over it and 2) Plaintiffs have not used the proper procedures to collect on the judgment.

When a nonresident defendant contests personal jurisdiction, the Plaintiff bears the burden of establishing the district court's jurisdiction over that nonresident defendant. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). To exercise personal jurisdiction in this lawsuit, this court must find: (1) that EIC is subject to jurisdiction under Mississippi's Long-Arm Statute (Miss. Code Ann. § 13-3-57), and (2) that the exercise of *in personam* jurisdiction comports with the due process requirements of the Fourteenth Amendment of the United States Constitution.[1] *Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992); *EEOC v. Vicksburg Healthcare, LLC*, No. 3:13cv895-KS-MTP, 2014 WL 4715463, at *2 (S.D. Miss. Sept. 22, 2014).

### 1. Mississippi's Long Arm Statute

Mississippi's Long-Arm Statute provides:

> Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall **make a contract** with the resident of the state to be performed in whole or in part by any party in the state, or who shall **commit a tort** in whole or in part in this state against a resident or non-resident of the state, or who shall **do any business** or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. §13-3-57 (emphasis added).

---

[1] The Fourteenth Amendment to the United States Constitution guarantees: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV.

Mississippi's Long-Arm Statute has three sections that provide three distinct bases for personal jurisdiction, referred to as the three prongs. They are the 'contract' prong; the 'tort' prong; and the 'doing business' prong. See *Walker v. World Ins. Co.,* 289 F.Supp.2d 786, 788 (S.D. Miss. 2003). To exercise jurisdiction over EIC, this court must find one or more of the following: 1) that EIC entered into a contract to be performed in whole or in part in Mississippi; 2) that EIC committed a tort, in whole or in part in Mississippi; or 3) that EIC was "doing business" in Mississippi. *Sorrells v. R.&R. Custom Coach Works, Inc.* 636 So.2d 668, 671 (Miss. 1994).

EIC does not discuss the Long-Arm Statute in its opening brief at all. Its sole argument in its opening brief is that personal jurisdiction over it is not consistent with the due process provisions of the Fourteenth Amendment, because EIC lacks sufficient minimum contacts with Mississippi to be subjected to either specific or general personal jurisdiction in this state.

EIC only mentions the Long-Arm Statute in its Reply brief. The general rule in the Fifth Circuit is that arguments raised for the first time in a reply brief are waived. See e.g., *Hamstein Cumberland Music Group v. Williams,* 532 Fed. Appx. 538, 543 n.4 (5th Cir. 2013) (citing *Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.,* 602 F.3d 687, 702 (5th Cir. 2010)); *Jones v. Cain, 600* F.3d 527, 541 (5th Cir. 2010); *United States v. Jackson,* 426 F.3d 301, 304 n.2 (5th. Cir. 2005).

Following the general rule, this court, thus, construes EIC's argument in its Reply brief to be waived.

Even so, however, as discussed later in this opinion, this court is persuaded that EIC is subject to the "doing business" prong of Miss. Code Ann. §13-3-57. This court further is

persuaded that this court's exercise of personal jurisdiction over EIC comports with due process principles.

## 2. Minimum Contacts

If a non-resident defendant is subject to the Long-Arm Statute of the forum state, a plaintiff must then show, in order to establish personal jurisdiction, that the exertion of personal jurisdiction over the nonresident defendant comports with due process principles. The due process determination requires, first, that the nonresident defendant must have "purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Secondly, the exercise of *in personam* jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice*." Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir. 1997).

The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The court must accept the plaintiffs' uncontroverted allegations and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in plaintiffs' favor. *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002). See also *Ruston Gas Turbines, Inc., v. Donaldson Company, Inc. v. Corchran, Inc.,* 9 F.3d 415 (5th Cir. 1993).

EIC's entire argument against personal jurisdiction in its motion to dismiss, consists of only one paragraph. That argument boils down to this. EIC claims plaintiffs have not demonstrated that EIC had sufficient minimum contacts with Mississippi to support either general or specific personal jurisdiction. EIC's entire argument on personal jurisdiction is as follows:

5

Further, this Court lacks personal jurisdiction over EIC with respect to this ancillary proceeding because EIC is an Illinois domestic surplus lines carrier without an office or other physical presence in Mississippi. More specifically, EIC only issues insurance policies through various surplus lines brokers, and with respect to the subject policy, it was issued to a Nebraska resident (Prime Time) through a surplus lines broker located in Overland Park, Kansas as evidenced by the Declarations Page of Exhibit "A." Accordingly, Plaintiffs have failed to demonstrate sufficient minimum contacts to the support the exercise of either general or specific personal jurisdiction over EIC here in Mississippi, further supporting a dismissal of this proceeding. See, Daimler AG v. Bauman, 134 U.S. 746, 754-58 (2014); see also, Pitts v. Ford Motor Co., 127 F.Supp.3d 676 (S.D. Miss. 2015); Mullen v. Bell Helicopter Textron, 136 F.Supp.3d 740 (S.D. Miss. 2015); Trustmark National Bank v. Sevier County Bank, 2014WL4816154, *4 (S.D. Miss., 9/24/14); and Roxco, Ltd. v. Harris Specialty Chemicals, 133 F.Supp.2d 911 (S.D. Miss. 2000)(Judge Wingate presiding).

General jurisdiction occurs when the defendant's activities in the state are continuous and systematic. If the contacts are systematic and continuous, personal jurisdiction is conferred even if the particular cause of action has no relationship to those contacts. EIC says it does not do business in Mississippi, that it is an Illinois company that wrote a policy for a Nebraska company, through Kansas brokers. It is undisputed that EIC does not have an office or physical presence in Mississippi.

EIC relies on *Daimler* and its progeny. *Daimler AG v. Bauman,* 571 U.S. 117 (2014). See also *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014). In *Daimler*, the United States Supreme Court considered the factors necessary to establish general jurisdiction. The Court there observed that the issue in determining whether general jurisdiction exists over an out-of-state corporation is whether the defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.*" Daimler*, at 138-139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). It is very difficult, the Court said, to establish general jurisdiction for a corporation in a forum other than its place of incorporation or its principal place of business. *Id.* See also *Helicopteros Nacionales*

6

*de Colombia, S.A. v. Hall,* 466 U.S. 408, 411–12 (1984); and *Monkton,* 768 F.3d at 432.   As previously noted, Mississippi is not the place of incorporation for EIC; nor is it EIC's principal place of business.

Plaintiffs though, claim that EIC does business in the State of Mississippi on a consistent and systematic basis.  Plaintiffs argue that, "EIC has not only consented to the jurisdiction of this very court when sued approximately 6 times between 2004 and 2018, it has affirmatively chosen to file not less than 5 complaints and declaratory judgment actions in this very court, including 5 matters that were litigated by its present counsel and/or his law firm." *Plaintiffs' brief in Opposition* [doc. no. 210 p.4].  Plaintiffs have provided to this court, examples of litigation in which EIC has been engaged, in the federal district courts of Mississippi.  See e.g., *Jordan et al v. Maxfield & Oberton Holdings, LLC* 3:15-cv-220-CWR-LRA (S.D. Miss. 2015); *Nationwide Mut. Ins. Co. v. Evanston Ins. Co.,* 3:13-cv-196-HSO-RHW (S.D. Miss. 2013); *Byrd & Associates, PLLC v. Evanston Ins. Co.,* 3:07-cv-487-DPJ-JCS (S.D. Miss. 2007).  In those instances where EIC was a plaintiff, it purposefully availed itself of the courts in this state.  See e.g., *Evanston Insurance Company v. K. Mack Robinson, et al,* 3:16-cv-568 DPJ-FKB (S.D. Miss. 2016); *Home v. Evanston Ins. Co.* 1:08-cv-189-HSO-JMR; *Evanston Insurance Co. v. Byrd.,* 3:06-cv-725 TSL-JCS ( S.D. Miss. 2005).

Additionally, Plaintiffs say that EIC has acknowledged doing business in the State of Mississippi in pleadings filed with the court.   In those cases, EIC acknowledges writing policies of insurance in Mississippi and admits to doing business in this state.  See e.g., *Evanston Insurance Co. v. Neshoba Cty Fair Assoc.,* 4:05-cv-180 TSL-JMR ( S.D. Miss. 2005).  In its Complaint in that case, EIC stated: "[EIC] is authorized to do business within the state of Mississippi **and is, in fact, doing business in the state of Mississippi."** *Id., Complaint* [doc. no.

7

1]. That is the relevant inquiry, according to the Fifth Circuit in *Monkton*, -- not just whether EIC is doing business **with** Mississippi, but whether it is doing business **in** Mississippi. *Id.,* at 432.

In another case filed by EIC, the Complaint stated the following: "Jurisdiction and venue are proper over this Complaint for Declaratory Judgment and the parties hereto by reason of the fact that the subject policies were issued to Talon at its principal place of business in Jackson, Hinds County, MS." *Evanston Insurance Company v. K. Mack Robinson, et al,* 3:16-cv-568 DPJ-FKB (S.D. Miss. 2016) *Complaint* [doc. no. 1 at p.3]. Plaintiff in the case *sub judice,* has pleaded sufficient facts to show that EIC's contacts with Mississippi are "continuous and systematic" enough to render it "at home" in Mississippi. General jurisdiction is proper under the tests of *Daimler,* 134 S.Ct. at 761 and *Monkton Ins. Services, Ltd. v. Ritter,* 768 F.3d at 432-33 (5th Cir. 2014).

In support of its contention that it is not amenable to this court's jurisdiction in this case, EIC touts that it is a non-admitted surplus lines carrier and that it is not registered in Mississippi. Such companies register as "non-admitted" companies under Miss. Code Ann. §§ 83-21-17 *et seq.*[2] The non-admitted status, though, is not necessarily relevant to personal jurisdiction or lack

---

[2] The more pertinent parts of Miss, Code Ann. §83-21-17 provide as follows:
(1) The Commissioner of Insurance shall annually promulgate a list of nonadmitted insurers found eligible for writing business in the State of Mississippi, provided each such insurer qualifies under one (1) of the following paragraphs:
(a) Has capital and surplus or its equivalent under the laws of its domiciliary jurisdiction which is the greater of:
(i) The same requirements as to capital and surplus as is required of a company licensed to do business in the State of Mississippi; or
(ii) Fifteen Million Dollars ($15,000,000.00).
(b) The requirements of paragraph (a) of this subsection may be satisfied by an insurer's possessing of less than the minimum capital and surplus upon an affirmative finding of acceptability by the commissioner. The finding shall be based upon such factors as quality of management, capital and surplus of any parent company, company underwriting profit and investment income trends, market availability and company record and reputation within the industry. In no event shall the commissioner make an affirmative finding

thereof. In the instant case, EIC's policy designates the Commissioner of Insurance as the person upon whom process may be served "in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this policy, …" *EIC Policy* [doc. no. 206-1 at p. 26]. While EIC made much of this non-admitted status in oral arguments, and the fact that it was not registered with the Secretary of State, this status is not determinative of personal jurisdiction.

The Alabama district court case of *Frost v. North American Capacity Ins. Co.,* is informative. The insurance company in that case, like EIC, was also a surplus lines insurer. It was incorporated in New Hampshire and had its home office in New Hampshire, but operated on a non-admitted basis in all 50 states. It had no offices in Alabama but wrote a fair amount of insurance in Alabama. Significant to the court in that case, was that the insurance company regularly wrote the same type of polices all over the country. The insurer put its products into

---

of acceptability when the nonadmitted insurer's capital and surplus is less than Four Million Five Hundred Thousand Dollars ($4,500,000.00).
. . .

(2) The Commissioner of Insurance is specifically vested with authority to promulgate such rules and regulations as deemed necessary to carry out the provisions hereof.
(3) The commissioner shall publish a list of nonadmitted insurers found eligible for writing business in the State of Mississippi on a nonadmitted basis. The commissioner may, by giving seven (7) days' notice, at any time remove a nonadmitted insurer from such eligible list when it appears that such insurer no longer meets the requirements of the statute or regulations of the commissioner. When a nonadmitted insurer is placed upon or removed from the eligible list, all surplus lines insurance producers holding licenses under Sections 83-21-17 through 83-21-31 shall be notified of such eligibility or removal.
(4) Each nonadmitted insurer shall annually pay a filing fee of Five Hundred Dollars ($500.00) in order to be eligible for certification as a nonadmitted insurer.
(5)(a) Each insured in this state who directly procures or renews insurance with a nonadmitted insurer on properties, risks or exposures located or to be performed, in whole or in part, in this state, other than insurance procured through a surplus lines licensee, shall, within thirty (30) days after the date the insurance was so procured or renewed, file a written report with the commissioner, upon forms prescribed by the commissioner, showing the name and address of the insured or insureds, name and address of the insurer, the subject of the insurance, a general description of the coverage, the amount of premium currently charged, and additional pertinent information reasonably requested by the commissioner. . . .
Miss. Code. Ann. § 83-21-17.

the stream of commerce with the full expectation that it was insuring vehicles that would travel all over the country and that it might be haled into court anywhere that the policy was effective and in force. *Frost v. N. Am. Capacity Ins. Co.,* No. 3:17-CV-344-WKW-DAB, 2018 WL 2210439, at *5 (M.D. Ala. Apr. 20, 2018), report and recommendation adopted, No. 3:17-CV-344-WKW, 2018 WL 2209520 (M.D. Ala. May 14, 2018).

The *Frost* court quoted the Eleventh Circuit, stating as follows: "Since the Supreme Court's decision in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957), it has been the law that a company with insurance obligations in a state in which it has no other business has submitted to the jurisdiction of the state's courts." *Frost*, at *5 (quoting *Mut. Serv. Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 320.

Just as the *Frost* court said North American Capacity Insurance Company's activities of insuring risks in Alabama could be seen as satisfying the continuous and systemic ties necessary to confer general jurisdiction, EIC, by issuing policies to citizens in Mississippi, could also be seen as having the requisite continuous and systemic ties to this State, giving rise to general personal jurisdiction.  EIC sells policies in the State of Mississippi to the citizens of this state, and reaps the benefits of doing business here.  It should be held accountable to those insureds, as well as to other Mississippi insureds, whose policies were sold elsewhere.  In *Frost,* the court did not have to reach the general jurisdiction issue, since it found there was specific personal jurisdiction in that case.  In the instant case, this court finds that there is general jurisdiction over EIC.

The Fourth Circuit Court of Appeals, in *Rossman v. State Farm Mut. Auto. Ins. Co.*, said there was no doubt that the insurer could foresee being haled into court in Virginia.  As an automobile liability insurer, Consolidated could anticipate the risk that its clients would travel in

10

their automobiles to different states and become involved in accidents and litigation there. *Rossman,* 832 F.2d 282, 286 (1987).  An automobile insurer's policy includes the obligation to cover injuries in a broad range of circumstances in a broad range of forums.

The *Rossman* court noted that the accident took place in Virginia and the tort claims were tried in Virginia courts.  The court continued: "It would be unfair to require plaintiffs who prevailed in those actions to sue on their judgments in Illinois. Virginia has a compelling interest in providing a forum for its residents when insurers refuse to pay a claim." *Id.,* at 287.

In the case *sub judice*, the accident did not occur in the State of Mississippi, but the tort claims were tried in Mississippi.  Plaintiffs Tavita Farani and Tyler Bunting reside in the State of Utah.  Plaintiff Michael Locke is a resident of Idaho.  Plaintiffs chose to file their personal injury lawsuit in Mississippi, where File, the tortfeasor and the alleged insured, resides.  As the *Rossman* court stated, quoting the United States Supreme Court in *McGee v. International Life Insurance Co.,* "[t]hese residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant state in order to hold it legally accountable." *Rossman* at 287 (quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 (1957)).

In assessing whether a court has specific jurisdiction over a nonresident, the court looks to see whether the defendant's conduct related to the litigation creates a substantial connection with the forum State.  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore* 571 U.S. 277 (2014) (as quoted in *Monkton Ins. Services, Ltd. v. Ritter,* 768 F.3d at 432-33 (5th Cir. 2014).

In making the specific jurisdiction analysis, the Court of Appeals for the Fifth Circuit applies the following three-step analysis.

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed

11

itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir.2006)

If Plaintiffs can establish the first two prongs, the burden then shifts to EIC to show that exercising jurisdiction over it would be fair and reasonable. *Id.* Plaintiffs here point to the number and character of the litigation that Evanston has conducted in the State of Mississippi to establish sufficient minimum contacts and to show that EIC has purposefully availed itself of the privileges of conducting activities in Mississippi.

The Eleventh Circuit Court of Appeals has held that brokering and issuing policies in a particular state is enough to subject a non-resident defendant to specific jurisdiction. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.,* 207 F.3d 1351, 1358 (11th Cir. 2000). (Michigan insurance brokers who only dealt with plaintiff through a Florida insurance broker, held subject to specific personal jurisdiction in Alabama where the brokers "put the insurance policy into the stream of commerce, knowing full well that it was to be purchased by and delivered to an Alabama resident for a boat anchored in Alabama which would, of necessity, move in Alabama waters").

EIC has engaged in writing policies in the State of Mississippi and in states around the country, putting its product into the stream of commerce with knowledge that it might be held accountable in the courts of any of those states, including Mississippi. Of particular relevance in the instant case, is that EIC knew that Prime Time employed travelling health care workers, who resided in various states around the country, and Prime Time dispersed those employees to temporary work locations throughout the United States.

As the Ninth Circuit Court of Appeals has stated, "It is reasonable for insurers who contractually obligate themselves to indemnify and defend their insureds to anticipate being haled into court wherever their insureds travel…" because insurers have "the contractual ability to control the territory into which its 'product' – the indemnification and defense of claims – will travel." *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.,* 907 F. 2d 911, 914 (9th Cir. 1990); see also *Rossman v. State Farm Mutual Automobile Insurance Co.,* 832 F.2d 282, 286 (4th Cir. 1987) (finding personal jurisdiction over an insurer proper where the insurer's policy anticipated a defense of claims arising anywhere in the United States).

The first criteria for specific jurisdiction is met. EIC purposely directed its activities toward the forum state, Mississippi, and purposefully availed itself of the privileges of conducting activities here.

The second criteria is also met. According to the Ninth Circuit, where an insurer avails itself of the privileges and benefits of conducting business in a particular forum, "purposeful availment" can occur when it agrees to provide coverage to its insureds within the disputed forum and an insured event results in litigation within that forum. File, the tortfeasor, is a resident of Mississippi, and an insured under the policy EIC issued to her employer, Prime Time Health Care. An occurrence in North Dakota resulted in litigation in Mississippi that should have been anticipated, given the nature of the policy.

Plaintiff also points out that EIC engaged in settlement negotiations regarding this case that took place in the State of Mississippi, and that EIC representatives attended the trial of this case in Mississippi. EIC had multiple communications concerning this case in Mississippi.

The third factor is also present.  This court is persuaded that the exercise of personal jurisdiction in this instance, under these circumstances, is fair and reasonable.  As the United States Supreme Court said in *Burger King Corp. v. Rudzewicz*,

> [W]here individuals "purposefully derive benefit" from their interstate activities, *Kulko v. California Superior Court,* 436 U.S. 84 (1978), it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473-74 (1985) (quoting *McGee v. International Life Insurance Co.,* 355 U.S., at 220, 223 (1957)).

This court does have *in personam* jurisdiction over EIC in this case.  Having written policies of insurance in this state, EIC cannot say it did not expect to be haled into court here.  EIC has, in fact, been haled into federal courts in Mississippi on numerous occasions, and EIC either invoked or acknowledged the jurisdiction of the court, or the court found that personal jurisdiction existed in those cases.   As Plaintiff points out in its opposition brief, "it would be manifestly unfair were EIC to both partake of the benefit of issuing surplus lines policies, while simultaneously eschewing jurisdiction in Mississippi." [doc. no. 210 p.8 ].  This court is persuaded that personal jurisdiction is established.

### 3.  "Service of Suit" Provision

The EIC policy issued to Prime Time includes a 'service of suit' provision which states: "… in the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United

States and will comply with all requirements necessary to give such court jurisdiction . . . *EIC Policy* [doc. no. 206-1 at p. 26].

Generally, courts interpreting Mississippi law have found that "service of suit" provisions in insurance policies waive any right of the insurer to contest personal jurisdiction in any court of competent jurisdiction chosen by the insured to recover proceeds owing under the policy. The Fifth Circuit has frequently applied a service of suit provision to subject the insurer to the jurisdiction of the court when the insurer is sued on the policy. See *City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 15 (5th Cir. 1991*); McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1201 (5th Cir. 1991); *Int'l Ins. Co. v. McDermott Inc*., 956 F.2d 93, 96 (5th Cir. 1992); and *Southland Oil Co. v. Mississippi Ins. Guarantee Ass'n.* 182 F. App'x 358, 361 (5th Cir. 2006).

Plaintiffs contend that this provision waives any objection EIC might have to personal jurisdiction in this court, and requires EIC to submit to the jurisdiction of any court of competent jurisdiction within the United States, at the behest of the insured, including File, and at the request of third-party beneficiaries who stand in the shoes of the insured.

EIC counters that the term "your" in this service of suit provision refers only to the "named insured" under the contract, based on the definition of "your" provided on the first page of the policy. *EIC Policy* [doc. no. 206-1 at p. 12]. That definition states, "[t]hroughout the policy the words "you" and "your" refer to the Named Insured shown in "Item 1" of the Declarations. . ." The named insured as shown in Item 1 of the Declarations is Prime Time HealthCare. EIC argues that the right to have EIC submit to the jurisdiction of a particular court belongs to Prime Time alone, and does not belong to File (the tortfeasor) or to Plaintiffs.

Plaintiffs, on the other hand, claim that "your" as used in the language of the "service of suit" provision, includes additional insureds. Therefore, say Plaintiffs, File, as an insured, could invoke the "service of suit provision," and Plaintiffs, as File's judgment creditors, would stand in her shoes with respect to her rights against the insurer.

This court has not found any Mississippi jurisprudence on this exact point. Other jurisdictions have considered and resolved the issue, however.

The Tenth Circuit Court of Appeals, in *Marathon Ashland Pipe Line LLC v. Maryland Casualty Co.*, 243 F.3d 1232 (2001), rejected the insurer's argument in that case and concluded that additional insureds also qualified as named insureds under the policy at issue; therefore 'you' refers to additional insureds. The Maryland Casualty policy contained the following provision: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy." *Id.,* at 1241.

In *Wyner v. North American Specialty Ins. Co.*, 78 F.3d 752, a case from the First Circuit, a group of landlords argued that the term 'Named Insured' did not apply to them. The landlords said they were part of the more broadly defined category referred to in the policy as "an insured" or "any insured" or those "insured," and thus a particular exclusion in the policy did not apply to them, but only to the named insured. The landlords claimed the usage of 'you' and 'your' referred only to the Named Insured shown in the Declarations, and excluded them. The district court and the Court of Appeals concluded differently. See also *Prisco Serena Strum Architects, Ltd. v. Liberty Mutual Ins. Co.,* 126 F.3d 886, 892 (1997)("the word 'you' in the Liberty policy … can also include "any other person or organization qualifying as a Named Insured under the policy, such as [the architectural firm].")

16

According to Plaintiffs, the service of suit provision is at least ambiguous, because the policy does not use the term "your" exclusively to refer to the named insured. In other places in the policy, "you" and "your" are used to refer to other insureds, or it is unclear whether the terms refer to only the named insured or include other insureds, Plaintiff s say. Plaintiffs cite as an example, Exclusion 6 on page 4 of the policy It states: "property in your care custody or control." This exclusion certainly applies to File and other additional insureds, Plaintiffs say. Plaintiffs also point to the exclusion for personal advertising injury "arising out of the unauthorized use of another's name or product in your e-mail address." [doc. no. 217-7 p. 17]. It is the individuals and employees of a company that usually have email addresses, and certainly this exclusion would apply to them. In these instances Plaintiff says 'your' includes additional insureds.

The courts have spoken clearly and consistently to ambiguities in insurance policies. In *Roland v. Allstate Ins. Co.,* the Fifth Circuit Court of Appeals reversed and remanded a district court's opinion and, in doing so, stated a major principle of insurance law and of contract interpretation, as follows:

> Even if the proper interpretation of the endorsement were not clear and could be said to contain ambiguity, we would still be inclined to reversal. As this Court has recently said: We are also mindful of the desirability, as a matter of public policy, to protect the injured party and to construe the policy in such a manner so that those who are injured are not abandoned without compensation. * * * 'It is settled doctrine that an insurance contract is to be liberally construed for the protection, not only of the named insured and those within its omnibus clause, but also the innocent plaintiff who was injured by the negligent use of the insured automobile.'

*Roland v. Allstate Ins. Co.,* 370 F.2d 289, 292 (5th Cir. 1966) (citing *Float-Away Door Co. v. Continental Casualty Co.,* 372 F.2d 701 (5th Cir. 1966).

The Fifth Circuit, in *Roland*, was relying on Texas law, but the principles are well established in Mississippi jurisprudence. See *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419 (5th Cir. 2007); *Farmers Ins. Exch. v. Sheffield*, No. 1:16-CV-134-SA-RP, 2017 WL 3879086, at *2 (N.D. Miss. Sept. 5, 2017) (ambiguities in an insurance contract are to be construed against the insurer); *Renasant Bank v. St. Paul Mercury Ins. Co.*, 235 F.Supp.3d 805 (N.D. Miss. 2017) (general rule is that ambiguities in insurance contracts are to be construed strictly against the underwriter); *St. Paul Fire & Marine Ins. Co. v. Renegade Super Grafix, Inc.*, 209 F. Supp. 3d 895, 904 (S.D. Miss. 2016); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d at 395, 399 (5th Cir. 2008); see *Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir.2001) ("Mississippi courts strictly construe any ambiguity in an insurance policy against the insurer."). *U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 198–99 (Miss. 2002) ( It is well settled that ambiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company).

This court concludes that the service of suit provision acts as a waiver of jurisdiction by EIC in this case.

Plaintiffs also argue that if File can assert the "service of suit" provision, Plaintiffs can, as well. See *Royal Indemnity Co. v. Rexford*, 197 F.2d 83, 85 (5th Cir. 1952). The Oregon case of *Triad Mech., Inc. v. Coatings Unlimited, Inc.,* decided just that issue. *Id.,* 2007 WL 2713842, at *2 (D. Or., Sept. 12, 2007).   In *Triad,* Royal Surplus Lines Ins. Co. ("Royal") recognized that federal courts have interpreted service of suit provisions as compelling the insurer to submit to the forum chosen by the insured.  Royal argued, however, that only the insured, and not the judgment creditor, could invoke the provision.  A garnishment proceeding, the court said, "is, in substance, equivalent to an action on the policy in which plaintiff stands in the shoes of the

18

insured." See *Cowley v. Texas Snubbing Control, Inc*., 812 F. Supp. 1437,1445 (S.D. Miss. 1992) (Legally intended beneficiaries of an insurance contract … may sue to recover on the contract, as may judgment creditors of the insured, who are considered intended third-party beneficiaries of the insured's policy).  See also *Roland v. Allstate Ins. Co*., 370 F.2d 289, 291 (5th Cir. 1966) (injured party who acquires judgment against tortfeasor may sue tortfeasor's insurer directly to enforce the judgment up to the limits of the policy).

The *Triad* court also noted that other courts interpreting similar policies defining 'you' and 'your' as the named insured, have concluded that the these terms include additional insureds. *Id.,* at *3.

This court is persuaded that the "service of suit" provision of the insurance policy provides for EIC to submit to the jurisdiction of a court otherwise of competent jurisdiction, chosen by its insured or third-party beneficiaries who step into the shoes of the insured.  Even if it does not, however, this court finds personal jurisdiction exists in this case over EIC.

For all of the reasons stated in this Opinion, this court is persuaded that personal jurisdiction over EIC is proper in this court.

## WRIT OF EXECUTION

EIC also contends that Plaintiff's writ of execution was not filed in accordance with Rule 69 of the Federal Rules of Civil Procedure.  EIC contends plaintiffs should have enrolled the judgment pursuant to 28 U.S.C. § 1963, in an appropriate district, i.e., one having personal jurisdiction over EIC, to be enforced like any other judgment of that district.  Otherwise, says EIC, plaintiffs were required to file a garnishment action under the laws of Mississippi, to enforce their judgment.

If an incorrect approach to collecting on the judgment has been chosen, this is a matter that can be corrected by Plaintiffs. Plaintiffs are allowed twenty days from the date of this order to file the appropriate proceeding. EIC has not provided any legal authority that states dismissal of this action is appropriate under such circumstances.

IT IS THEREFORE ORDERED AND ADJUDGED, that EIC's motion to dismiss **[doc. no. 206]**, is **denied.**

SO ORDERED AND ADJUDGED, this the 30th day of September, 2021.

s/ HENRY T. WINGATE  
UNITED STATES DISTRICT JUDGE