IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TAVITA FARANI, TYLER BUNTING and                                    PLAINTIFFS
MICHAEL LOCKE


VS.                                          CIVIL ACTION NO. 3:16-CV-227


LESLIE FILE                                                          DEFENDANT


EVANSTON INSURANCE COMPANY                          JUDGMENT DEBTOR

## POST-JUDGMENT ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING INSURANCE COVERAGE

Plaintiff Tavita Farani brings this Motion for Summary Judgment [doc. no. 217], asking

this court to find, as a matter of law, that Defendant Leslie File was covered by the Evanston

Insurance Company (" EIC") umbrella policy procured by her employer, Prime Time HealthCare

LLC (hereafter "Prime Time").  Plaintiff Tyler Bunting joined in the motion [doc. no. 220].

This lawsuit stems from a vehicular wreck that occurred in the State of North Dakota on

July 23, 2014.  The car driven by Leslie File (hereafter "File") struck a van carrying nine

passengers.  All of the van's occupants claimed injuries arising out of the accident, including the

three plaintiffs in the case *sub judice* (Tavita Farani, Tyler Bunting and Michael Locke).  After a

jury trial lasting six days, the jury found in favor of the three Plaintiffs in this case and against

File, the driver, in the following amounts: $877,780.00 for Tavita Farani; $617,707.61 for Tyler

Bunting; and $583,519.00 for Michael Locke.  The total verdict was $2,079,006.61.

File, a resident of Mississippi, was a traveling nurse employed with Prime Time.  She

was on assignment in the State of Montana at the time of the wreck.  File was driving an

automobile rented for her use by Prime Time, and was returning to the State of Montana after

visiting friends.  The jury found File liable, but did not find against her employer, Prime Time.

The jury concluded that File was not acting within the course and scope of her employment at

the time of the wreck, a finding which negated respondeat superior[1] for Prime Time.

Plaintiff Farani lists the following as Undisputed Material Facts:

1. Leslie File was in a car accident with Plaintiffs on [July][2] 23, 2014 ("the Accident").

2. File was an employee of Primetime [sic] Healthcare ("Primetime") on [July] 23, 2014.

3. File was found liable for the Accident and Judgement was entered against her for more than $2,000,000.

4. Primetime [sic] was not liable for the Accident because the jury found File was not in the course and scope of her employment for Primetime [sic] when the Accident occurred.

5. At the time of the Accident, Primetime [sic] had an automobile liability insurance policy with Travelers ("the Travelers Policy").

6. Although the jury found that File was not in the course and scope of her employment for Primetime [sic], File still "qualifies individually as an 'insured' under the terms of the [Travelers] Policy" with respect to the Accident.

7. Accordingly, Travelers has paid out the limits of its insurance.

8. At the time of the Accident, Primetime [sic] also had a $2,000,000 umbrella liability insurance policy with EIC ("the EIC Policy").

9. The EIC Policy states that the following qualify as an "insured": "Any other person or organization who is insured under the 'controlling underlying insurance.'"

10. The EIC Policy states that "Controlling underlying insurance" includes "any other insurance available to the insured[.]"

11. The EIC Policy further states: "We will pay on behalf of the insured for that portion of the 'ultimate net loss' in excess of the 'underlying limit' because of 'bodily injury' or 'property damage' to which this insurance applies but only up to the Limits of Insurance stated in the Declarations."

12. The term "ultimate net loss" is defined as "the total amount of 'damages' for which the insured is legally liable in payment of 'bodily injury'[.]"

---

[1] Respondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant committed within the scope of employment  See e.g., *Doe v. Medeiros*, 168 F. Supp. 3d 347, 351 (D. Mass. 2016).

[2] Plaintiff inadvertently states *June* 23, 2014 as the date of the accident under number 1 and 2.  The accident date, however, was *July* 23, 2014.  See *Complaint* [doc. no. 1 ¶9] and *Incident Report, North Dakota Highway Patrol* [doc. no. 217-2 pp.1-4].

13. EIC denied coverage for File and never filed a declaratory judgement action against her.
14. File still owes more than $1,000,000 after the Travelers Policy is exhausted.
15. Ms. File filed for bankruptcy.
16. Plaintiffs have obtained relief from the automatic stay in File's bankruptcy.

*Plaintiffs' Memorandum Brief* [doc. no. 218 pp. 2-4]

In his joinder to Plaintiff Farani's Motion for Summary Judgment, Plaintiff Tyler Bunting submitted two additional undisputed material facts in support of his motion as follows:

1. On February 13, 2019, Ms. File's bankruptcy petition was granted and her personal obligations, including the judgment in favor of Plaintiffs was discharged by the U.S. Bankruptcy Court for the Southern District of Mississippi. See *Order of Discharge* [doc. no. 220-1].

2. Plaintiff Bunting did not receive any payment from Ms. File's Bankruptcy matter to apply to his January 9, 2019 Proof of Claim, establishing amounts due and owing to him under this Court's Judgment. See *Proof of Claim* [doc. no. 220-2].

EIC has neither disputed the facts as listed above nor provided its own statement of undisputed facts. These facts then, are taken as confessed and there is no genuine dispute of material fact.

Travelers Casualty Insurance Company of America ("Travelers"), an automobile insurer for Prime Time, acknowledged coverage for the wreck at issue here, and paid all of the persons injured in the wreck, including the Plaintiffs in this lawsuit, up to the limits of its policy. Two factors were evident that caused Travelers to acknowledge its obligation of coverage.

First, Travelers determined that Ms. File was an insured under its [Travelers'] policy. As Plaintiffs stated in the second motion hearing on September 23, 2019, Ms. File was the "driver, with permission," of an automobile rented by Prime Time for her use. That brought her under

3

the Travelers automobile policy.  Plaintiffs contend this also makes her an insured under the

umbrella policy issued by Evanston Insurance Company ("EIC") to Prime Time.  Plaintiffs argue

that because File was an insured under "Travelers," an underlying insurer to the EIC umbrella

policy, she met the definition contained in EIC's policy of an "insured," that is, "one covered by

an underlying policy."

Secondly**,** Travelers acknowledged, and none of the parties disputes, that on the date of

this accident, July 23, 2014, the Travelers policy had already been purchased and was in effect.

The Travelers policy had been in effect since before the date of the accident.   Again, Plaintiffs

contend this also makes her an insured under EIC's umbrella policy, since, according to

Plaintiffs, the Travelers policy automatically became "underlying insurance" to the EIC policy

without any requirement that it be listed on the schedule of underlying insurers.

EIC, on the other hand, denies that File was covered by its umbrella policy for the

accident at issue here, despite being covered by the Travelers policy.  According to EIC,

Travelers was *not* a scheduled underlying insurer to EIC's umbrella policy on the date of the

accident.  EIC cites to the exclusion in its policy that provides: "Coverage A of this policy does

not apply to: "Bodily Injury" or "property damage" arising out of the …use… of any 'auto,'

except to the extent that coverage is provided by a policy listed in the Schedule of Underlying

Insurance… *EIC Policy* [doc. no. 217-7 p. 16 ¶12]. If Travelers was not listed in the Schedule of

Underlying Insurance at the time of the wreck, EIC says it has no coverage obligation for the

wreck.

EIC alleges that when Prime Time procured the Travelers automobile policy, that  policy

was not immediately added to EIC's schedule of underlying insurers.  Although the Travelers

policy was purchased by Prime Time prior to the wreck at issue, EIC says Travelers was not

added as a scheduled insurer until September 22, 2014 (two months after the accident). EIC's version of events is that when the brokers contacted EIC to add Travelers to the underlying schedule, the Travelers policy had already been in effect several months and the wreck had already occurred.[3]

Nevertheless, according to EIC, the brokers[4] asked *and EIC agreed* to backdate the effective date of the Travelers addition to the schedule, to March 27, 2014; thus, EIC intended and agreed that Travelers was a scheduled insurer under the EIC umbrella policy *as of* March 27, 2014, by virtue of the backdating. See *EIC Policy* [doc. no. 217-7 pp. 34-35]. EIC provides very little information in its Memorandum Brief as to why the Travelers policy, whenever it was added to the schedule, would have been given an effective date of March 27, 2014; however the EIC policy issued to Prime Time and attached as an Exhibit to EIC's Memorandum brief shows that the effective dates of the umbrella policy were from March 27, 2014 to March 27, 2015, see

---

[3] Prime Time admitted, in its Answer filed in the Nebraska litigation, that "a commercial automobile policy was not listed on the [EIC] policy's "Schedule of underlying insurance in March 2014."" *Answer, Counterclaim, and Jury Demand of Prime Time Healthcare, LLC* [doc. no. 225-1 ¶ 13] (emphasis added). *Evanston Insurance Company v. Prime Time Healthcare LLC*, Case No. 8:16-cv-159, 2018 WL 3369688, *1 (D. Neb. July 10, 2018). Prime Time denies in its Answer, however, that the Travelers Policy was added to the Evanston policy *after* the accident." *Id.* at ¶¶ 33, 42.

This court takes judicial notice of this pleading from the United States District Court of Nebraska. See *Lake Eugenie Land & Dev., Inc. v. Halliburton Energy Servs. (In re Deepwater Horizon)*, 934 F.3d 434, 440 (5th Cir. 2019) ("We may take judicial notice of prior court proceedings as matters of public record.") (as cited in *Siplast, Inc. v. Emps. Mut. Cas. Co.,* 23 F.4th 486, 493 fn.2 (5th Cir. 2022).

[4] The brokers referred to are Prime Time's Insurance agents, Omaha Agency Services, LLC d/b/a/ Rensing Insurance; and Jeffrey W. Brown, the licensed account manager for that agency who acted as Prime Time's main point of contact (collectively, "Rensing"). EIC alleges that Rensing made misrepresentations or concealed information when they notified EIC that Prime Time had purchased a commercial automobile policy through Travelers. *Evanston Ins. Co. v. Prime Time Healthcare LLC,* No. 8:16CV159, 2018 WL 3369688, at *1 (D. Neb. July 10, 2018). [doc. no. 225-2]. Rensing says it had no duty to EIC because it had to communicate with EIC through Risk Placement Services, Inc. ("RPSI") a wholesale insurance broker that acts as an intermediary between insurance agents (such as Rensing) and insurance providers (such as EIC). RPSI is the wholesale insurance broker that Rensing used to procure coverage from EIC for Prime Time. *Evanston Ins. Co. v. Prime Time Healthcare LLC,* No. 8:16CV159, 2018 WL 3369688, at *2 (D. Neb. July 10, 2018). See [doc. no. 225-2].

[doc no. 221-1 p. 1]; so, EIC might simply have added Travelers as of the effective date of their umbrella policy, which was March 27, 2014.

Unfortunately, says EIC, the accident involving Defendant File and the Plaintiffs had already occurred without EIC's knowledge.  EIC now contends that it was the "misrepresentation" or omission by the brokers, that caused it to backdate the policy.  Nonetheless, ***EIC did backdate it***.  None of the parties alleges that either Prime Time or File had any knowledge of, or responsibility for, the alleged omission or "misrepresentation."  Any delay in notification and the resulting backdating were the result of a mistake or "misrepresentation" on the part of the brokers,  or a failure of EIC or its predecessor to do due diligence, or both.  Plaintiffs here question whether there was, in fact, any delay in listing the Travelers policy as an underlying insurer on the umbrella policy as EIC contends; but Plaintiffs say it does not matter to their position.

Plaintiffs assert it is immaterial when the Travelers policy was actually added to the underlying schedule because, say Plaintiffs, the EIC policy defines underlying insurance, in two places, to include "other insurance available to the insured:" The policy states the following:

> 'Controlling underlying insurance' means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance of this policy as "controlling underlying insurance" and any renewals or replacements of such policies.  '***Underlying insurance' also includes any other insurance available to the insured,*** except such insurance as may be purchased to apply specifically in excess of this policy.

*EIC Policy* [doc. no. 217-7 p. 29 ¶ I] (emphasis added).

The policy provides in another section:

> 'Underlying Insurance' means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance of this policy and any renewals or replacements of such policies.  '***Underlying insurance' also includes any other insurance available to the insured,*** except such insurance as may be purchased to apply specifically in excess of this policy.

*EIC Policy* [doc. no. 217-7 p. 32 ¶ EE].

Given that Prime Time was not at fault for the alleged failure to timely list Travelers as an underlying insurer, neither Prime Time nor the intended beneficiaries under the EIC policy should bear the consequence of this alleged failure.   Additionally, Prime Time is entitled to the benefit of its bargain in purchasing both the umbrella policy and an additional underlying liability policy.  "Contractual parties making mutual promises must be entitled to the benefit of their bargain." *Minnesota Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 968 (Miss. 2014) (citing  *Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So.2d 1159, 1166 (Miss.2004).

Pursuant to the language of EIC's own policy, Travelers ***was*** an underlying insurance despite not being listed on the schedule, because it was "available to the insured" for the date of the accident, and actually paid Plaintiffs' claims up to the policy limits.  Since Travelers was an underlying insurer for the date of the accident, Ms. File was an insured under the EIC umbrella policy.  On that date, Travelers ***was*** a scheduled insurer (either because of back dating or in the normal course).

Only later did a question arise  as to whether Travelers *should* have been a scheduled insurer because of EIC's allegations of "misrepresentation" by the brokers.  Either way, Ms. File is an insured under EIC's policy.  Regardless of the status of Travelers *on* the date in question, Ms. File was covered by Travelers and Travelers was an underlying insurer *for* the date of the accident.

EIC also relies on a Stipulated Judgment from the United States District Court of Nebraska in support of its position.  *Evanston Insurance Company v. Prime Time Healthcare LLC*, Case No. 8:16-cv-159, 2018 WL 3369688, *1 (D. Neb. July 10, 2018).  EIC filed a declaratory judgment action in Nebraska federal district court.  At issue was whether the EIC

umbrella policy covered Ms. File's accident, given that the Travelers policy was only added to the EIC umbrella policy after the accident had occurred.   Allegedly, the brokers, having failed to add Travelers to the EIC umbrella policy in timely fashion, failed to inform EIC that the wreck had already occurred when they called to have Travelers added as an underlying insurer.  The parties do not contend that any "misrepresentation" was on the part of Prime Time.

The stipulated judgment in the Nebraska federal district court case entered July 10, 2018, reformed the EIC policy and endorsement to exclude umbrella coverage for any occurrences related to the Travelers Policy prior to September 22, 2014, the date EIC issued an endorsement to Prime Time adding Travelers to the schedule of underlying insurance.  If accepted by this court, that would mean that no umbrella coverage was available for the Travelers policy at the time of this accident, which occurred on or about July 23, 2014.

The Nebraska judgment does not meet the criteria for res judicata or issue preclusion to apply. "Federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts…" *Kremer v. Chem. Const. Corp*., 456 U.S. 461, 482, 102 S. Ct. 1883, 1898, 72 L. Ed. 2d 262 (1982).  In Mississippi, the doctrine of res judicata requires the presence of four identities:  "(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Harrison v. Chandler–Sampson Ins., Inc*., 891 So.2d 224, 232 (Miss.2005).  The absence of any one of the elements is fatal to a finding of res judicata. *Hill v. Carroll Cty.,* 17 So. 3d 1081, 1085 (Miss. 2009) (quoting  *Estate of Anderson v. Deposit Guar. Nat'l Bank,* 674 So.2d 1254, 1256 (Miss.1996).

At least one of the identities was missing in the Nebraska litigation. The parties to the Nebraska proceeding were only EIC and Prime Time.  Neither File nor the Plaintiffs here were made a part of that litigation.  Strict identity of the parties is not necessary, however, for either res judicata or collateral estoppel, if it can be shown that a nonparty stands in privity with the party in the prior action.  *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1091 (Miss. 2009).

"Privity describes a relationship between one who is a party of record and a nonparty that is sufficiently close[,] so a judgment for or against the party should bind or protect the nonparty." *Doss v. Dixon,* 131 So. 3d 1265, 1270 (Miss. Ct. App. 2014) (citing *Little v. V & G Welding Supply Inc.,* 704 So.2d 1336, 1341(Miss.1997)).  Ordinarily, a party who is vicariously responsible for the acts of another party is in privity with that party, such as an employer-employee relationship where liability is based on respondeat superior.  In the instant case, however, Prime Time is not being held liable for the actions of File, since the jury determined that File was not acting in the course and scope of her employment at the time of the wreck.  Therefore, privity between Prime Time and File did not exist in the Nebraska litigation.

The interests of Prime Time and File actually were dissimilar.  Prime Time was not motivated to protect File's interests in the Nebraska proceeding, since it was not being held vicariously liable for her actions.  On the contrary, Prime Time would have had more incentive to exclude File (who is no longer a Prime Time employee) from coverage under its policies, in order to maintain good relations with its insurer EIC, or to avoid possible premium increases.

Moreover, for res judicata to apply, the judgment must be a final judgment adjudicated on the merits*.  Doss v. Dixon,* 131 So. 3d 1265, 1269 (Miss. Ct. App. 2014) (citing *EMC Mortgage Corp. v. Carmichael*, 17 So.3d 1087, 1090 (¶ 10) (Miss.2009));  *Onebeacon America Ins. Co. v. Barnett,* 761 Fed. Appx. 396 (5th Cir. 2019).  This, too, is missing in our scenario.  The Nebraska

Judgment was a stipulated judgment.  It was not the consequence of an adjudication on the merits. It was agreed upon and stipulated to by the only two parties to that litigation, EIC and Prime Time; and as earlier discussed, Prime Time no longer had any motivation to prove that the wreck was covered by EIC.

A finding that this court is not deprived of jurisdiction over this issue due to res judicata or issue preclusion, does not resolve the substantive dilemma, however.  Plaintiffs are asking this court to determine whether the Defendant, Leslie File, was an underlying insured under the EIC policy, such that the policy covered the injuries to Plaintiffs in this case.  EIC, of course, says she was not.

In this court's eye, key to this issue is that EIC backdated the date of inclusion for the Travelers policy under EIC's umbrella insurance policy.  Even if, as EIC contends, EIC did not become aware of the existence of the Travelers' policy until September of 2014, the policy was backdated or made effective as of March 27, 2014, a date *before* this accident occurred.  EIC agreed to backdate the underlying policy.  Making the listing retroactive to the beginning of the policy period means the accident here was covered, since it occurred during the period that the parties showed by their backdating that they intended to be covered.

 Some inquiries by EIC might have uncovered that the accident had already occurred. EIC could have asked more questions of the brokers whom EIC says are to blame.  EIC also could have taken measures to protect itself, such as requiring Prime Time to attest that there had been no losses during this period before agreeing to backdating the schedule listing. Ultimately, EIC agreed to backdate the policy and did so.  If it failed to take adequate precautions, EIC should bear the brunt of the consequences, and not Prime Time or the intended beneficiaries of its policies.

EIC also argues that the "known loss doctrine" is fatal to Plaintiffs' claims.  This doctrine would apply to defeat coverage for an occurrence that took place or was in progress prior to the purchase of insurance.  See e.g., *Sosebee v. Certain Underwriters at Lloyds London*, 566 Fed. Appx. 296, 297 (5th Cir. 2014); *Essex Ins. Co. v. Redtail Products, Inc.,* 213 F.3d 636 (5th Cir. 2000).  The accident at issue here may have occurred prior to notification to EIC of the existence of the Travelers policy, and prior to the actual listing of Travelers on the EIC schedule of underlying insurers (which EIC says occurred in September of 2014), but it did *not* occur prior to the purchase of the Travelers policy by PrimeTime, File's employer.

Plaintiffs here aver and EIC has not disputed, that the Travelers policy had been purchased and was in effect on the day of the accident.  The policy period was from July 22, 2014 to July 22, 2015.  See *Traveler's  Insurance Policy*  [doc. no. 217-6 p.3] Moreover, Plaintiff's undisputed material facts state at number 5, "[a]t the time of the Accident, Primetime had an automobile liability insurance policy with Travelers ("the Travelers Policy"). [doc. no 218 p.3].  As earlier stated, EIC does not challenge Plaintiffs' undisputed material facts, nor provide its own undisputed material facts. This court, then, accepts as fact that the Travelers policy was in effect on the date of this tragic accident.  Therefore, the "no known loss" doctrine is inapplicable.

Whatever the circumstances under which Travelers was not added timely to the umbrella policy, (if, in fact, it was not), Prime Time apparently thought, when it rented a car for File's use, that it was insured under its larger policy for automobile accidents, *as well as* under its Travelers policy.   Prime Time went about conducting its business under the assumption that it had sufficient insurance coverage for automobile accidents for itself and its employees.  It continued

to send its employees around the country to various assignments, in automobiles rented by Prime Time for their use.

CONCLUSION

This court is persuaded that the EIC policy covered Leslie File for the accident in question, and there being no disputed issues of material facts, Plaintiff's Motion for Summary Judgment **[doc. no. 217]** is **granted.**

SO ORDERED AND ADJUDGED, this the 23rd day of March, 2021.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE